IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LEROY ORANGE,                          )
                                       )
                 Plaintiff             )
                                       )
        v.                             )      No. 04 C 0168
                                       )
JON BURGE et al.,                      )
                                       )
                 Defendants.           )

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Leroy Orange ("Orange"), filed a twelve count amended complaint on April 22, 2004 against various former City of Chicago police officers, the current Cook County State's Attorney, former assistant Cook County State's Attorneys, the City of Chicago, Cook County and the Cook County State's Attorney's Office. (Dkt. No. 9). Orange claims civil rights violations under 42 U.S.C. § 1983 for deprivation of the right to a fair trial, wrongful conviction, false arrest and imprisonment, torture and physical abuse, coercive interrogation, due process violation through deprivation of access to courts and a Monell claim. Additionally, Orange alleges state law claims for false imprisonment, malicious prosecution, intentional infliction of emotional distress, conspiracy, and asserts he has a right to compensation for his claims under respondeat superior, pursuant to 745 ILCS § 10/9-102, and the common law. The defendants have filed various motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Rules"), to stay discovery. (Dkt. Nos. 35, 37, 41, 50, 53). For the reasons set forth below, this court grants in part, and denies in part, the defendants' motions to dismiss.

The following alleged facts, unless otherwise noted, are taken from Orange's first amended complaint of April 22, 2004, and are regarded as true for the purposes of evaluating the current motions to dismiss. See Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002).

Orange states that he has served nineteen years in prison on death row in Illinois for four murders that he did not commit. He was pardon for these alleged murders on January 10, 2003 by then Governor George Ryan on the basis of innocence. (Dkt. No. 9 at 52). Orange states that he was wrongfully arrested and tortured by members of the Chicago Police Department. (Id. at 19-22.) He falsely confessed to the murders as a direct result of the torture. (Id. at 28). Orange asserts that had it not been for the torture and resulting cover-up, he would have never been convicted or incarcerated on death row until his pardon in 2003.

A. The Defendants

Orange's first amended complaint names the following 19 defendants: (1) Jon Burge ("Burge"), (2) Leonard Bajenski ("Bajenski"), (3) David Dioguardi ("Dioguardi"), (4) Robert Flood ("Flood"), (5) Raymond Madigan ("Madigan"), (6) Dennis McGuire ("McGuire"), (7) Raymond McNally ("McNally"), (8) Daniel McWeeny ("McWeeny"), (9) the Estate of John McCabe ("McCabe"), (10) Dennis Dernbach ("Dernbach"), (11) Richard Devine ("Devine"), (12) John Doe, an assistant state's attorney ("ASA DOE"), (13) Terry Hillard ("Hillard"), (14) Leroy Martin ("Martin"), (15) Gayle Shines ("Shines"), (16) Thomas Needham ("Needham"), (17) the City of Chicago ("City"), (18) Cook County, Illinois ("County"), and, (19) the Cook County State's Attorney's Office ("State's Attorney's Office"). Although the complaint is not clear on the issue,

it appears to the court that Orange is suing the individual defendants in both their official and individual capacities. The court will construe Orange's first amended complaint in that manner.

Burge is a former Lieutenant in the Chicago Police Department who had worked in Chicago Police Area 2 and 3. (Dkt. No. 9 at ¶ 4). At Area 2, Burge was the commanding officer for police officer defendants Bajenski, Dioguardi, Flood, Madigan, McCabe, McGuire, McNally and McWeeny. (Id.) Orange alleges that Burge, Bajenski, Dioguardi, Flood, Madigan, McCabe, McGuire, McNally and McWeeny engaged in torture at Area 2. (Id. at 5). Martin was the Superintendent of Police for the City from 1987 to 1992 and Hillard was the Superintendent from 1998 to 2004. (Id. at 6, 7). Before becoming Superintendent, Martin was Burge's direct supervisor when he served as the Commander of the Area 2 Detective Division. (Id. at 6). Needham was counsel and administrative assistant to Hillard. (Id. at 9). Shines served as the Director of the Office of Professional Standards of the Chicago Police Department ("OPS"), from 1990 to 1998.

Dernbach is a former Assistant Cook County State's Attorney ("ASA"), who was assigned to Area 2 in 1984. (Id. at 11). Dernbach served as a supervisor in the Felony Review Unit. (Id.) Devine has served as the State's Attorney of Cook County from 1997 to the present. (Id. at 12). John Doe was an ASA assigned to the Felony Review Unit. (Id. at 13).

B. Orange's Allegation

Renee Coleman, Anthony Coleman, Michelle Jointer and Ricardo Pedro were murdered on January 11, 1984 in Renee Coleman's apartment. (Id. at 16). Orange was arrested the next day by police officers from Area 2 including Flood, Madigan, McGuire, McWeeny and was taken to the Area 2 police station at 3:20pm. (Id. at 17, 18). Orange asserts that he asked for an attorney in the police car when being transported to Area 2, and in response, he was hit in the face by one of the

3

arresting defendant officers. (Id. at 19).

Orange was placed in an interrogation room in Area 2 where his hands were cuffed behind his back and attached to a metal ring on the wall. (Id. at 20). The defendant police officers began to interrogate Orange about the murders but Orange denied any involvement. (Id.) The defendant officers then used a "black box" to administer electric shock through electrodes that had been placed on Orange's arms and in his rectum. (Id. at 21). The defendant officers also repeatedly placed an airtight bag over Orange's head, suffocating him. (Id. at 22). In addition, the defendant officers continually squeezed Orange's testicles. (Id.) This conduct was performed on both Orange and his co-defendant, Leonard Kidd, ("Kidd"). (Id. at 23). Orange asserts that the "torture techniques" used on him are strikingly similar to those used on other suspects at the Area 2 and Area 3 police stations during Burge's tenure at those locations. (Id. at 33).

During the time of the torture of Orange and Kidd, Burge summoned ASA Dernbach to the Area 2 police station. (Id. at 24). Orange asserts that ASA Dernbach had learned of numerous allegations of torture against Burge and other Area 2 police officers through ASA Dernbach's position as Felony Review supervisor in the State's Attorney's Office. (Id. at 25). ASA Dernbach and ASA Doe were present in the interrogation rooms while Orange and Kidd were being tortured and did nothing to stop the torture and abuse. (Id. at 26, 27).

Orange alleges that he was tortured for a total of twelve hours by Burge and his men at the Area 2 police station. (Id. at 28). As a direct result of the torture, and in response to the police officers' demands, Orange falsely confessed to the murders based on information supplied by the defendant police officers and ASAs. (Id. at 29). Orange's complaint alleges that he stated the next day and numerous times afterwards that his oral and written confessions were false and instead were

4

a product of the torture. (Id. at 30, 31).

The false statements, along with perjured testimony from the officers, were then presented and used by the defendant officers and ASAs in official reports and then later in the prosecution of Orange for the murders. (Id. at 34, 35). The officers and ASAs also allegedly suppressed evidence of the torture from the judges and juries that heard Orange's trial, direct appeal and post-conviction petitions. (Id. at 36). Orange asserts that he was wrongfully convicted of the four murders along with four counts of concealment of homicidal death, and one count of aggravated arson and sentenced to death based solely on the false confession. (Id.)

The OPS opened an investigation into Orange's allegations of torture while he was awaiting trial. (Id. at 37). Orange asserts that this investigation was a "sham" and "cover-up" since the involved police officers and ASAs did not provide evidence to the OPS investigation, and OPS never questioned Orange or Kidd. (Id.) The OPS completed a second investigation into alleged torture in Area 2 and found a practice of systematic abuse from 1973 to 1985, and that Burge was a "player" in this practice. (Id. at 40). The second OPS investigation report discussed the torture of Orange. (Id.) Orange alleges that Martin delayed and suppressed the OPS report for over a year, thus preventing Orange from using the report in his post-trial proceedings. (Id. at 44). Martin and Shines also failed to investigate various other allegations of torture. (Id. at 45). Shines also suppressed other evidence of torture developed by OPS investigators during 1993 through 1998, (Id. at 50), and Hillard and Needham were complicate in the matter through their refusal to conduct investigations of the torture. (Id. at 51).

Devine became State's Attorney of Cook County in 1997. (Id. at 48). Before becoming State's Attorney, Devine had been retained by the City to represent Burge and several other Area 2

5

detectives in civil rights lawsuits brought by torture victim Andrew Wilson ("Wilson"), and other matters relating to torture allegations. (Id. at 46). Orange alleges that as State's Attorney, Devine has continued to make false public statements discrediting evidence of torture by Burge and others in a clear conflict of interest. (Id. at 49). This included a statement in which Orange alleges Devine publically defamed Orange after Orange was pardoned by Governor Ryan in January 2003. (Id. at 53).

## STANDARD OF REVIEW

Rule 12(b)(1) "provides a defendant a procedural vehicle by which the defendant may move a federal court to dismiss a claim or suit on the ground that the court lacks subject-matter jurisdiction." Davit v. Davit, No. 03 C 4883, 2004 WL 2966963, at *5 (N.D. Ill. Nov. 22, 2004). "The standard of review for a 12(b)(1) motion to dismiss depends on how [the] defendant frames the motion. If the motion contends that the allegations of jurisdiction are facially insufficient to show jurisdiction, then the 12(b)(1) standard of review mirrors the standard applied for 12(b)(6) motions. But if the motion challenges the truth of the facts alleged, then the court may look beyond the face of the plaintiff's complaint to resolve the factual disputes." Royal Towing, Inc. v. City of Harvey, 350 F. Supp. 2d 750, 752 (N.D. Ill. 2004) (internal citations omitted).

Dismissal of a claim under Rule 12(b)(6) is proper only when it appears beyond a doubt, based on the reading of the complaint, that "the plaintiff can prove no set of facts that would entitle him to relief." Hernandez v. City of Goshen, 324 F.3d 535, 537 (7th Cir. 2003) (citing Conley v. Gibson, 355 U.S. 41, 45 (1957)). All well-pleaded factual allegations in the complaint must be accepted as true and all inferences must be drawn in favor of the plaintiff. Id. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case."

Pleasant v. Risk Mgmt. Alternatives, No. 02 C 6886, 2003 WL 164227, at *1 (N.D. Ill. Jan. 23, 2003).

## ANALYSIS

The City, Hillard, Needham, Burge, Bajenski, Dioguardi, Flood, Madigan, McGuire, McNally, McWeeny, Martin and Shines have filed a joint motion to dismiss pursuant to Rule 12(b)(6) on July 29, 2004. (Dkt Nos. 35, 37). The court will refer to this motion as the "City Defendants' motion to dismiss." Devine, the State's Attorney's Office, the County and former ASA Dernbach filed a joint motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) on January 28, 2005. (Dkt. No. 51, 53). This motion superceded a prior motion to dismiss filed by this group on July 27, 2004. (Dkt Nos. 30, 52, 57). The court will refer to this superceding motion as the "County Defendants' motion to dismiss." Devine, the State's Attorney's Office, the County and former ASA Dernbach also filed a joint motion to stay discovery on January 28, 2005. (Dkt No. 50). This motion superceded the previous motion filed by Devine, the State's Attorney's Office, the County and former ASA Dernbach on September 10, 2004. (Dkt. No. 41).

### A. The City Defendant's Motion to Dismiss

The City defendants' motion argues for dismissal of Orange's first amended complaint on the following grounds that (1) the doctrine of collateral estoppel bars the current litigation because Orange has already litigated, and lost, the issues in this case during his direct appeal and post-conviction appeals in the Illinois state courts; (2) the claims for false imprisonment, excessive force, coercive interrogation and intentional infliction of emotional distress are time-barred under the statute of limitations; (3) the denial of access to court claim fails to state a claim upon which relief may be granted; (4) the allegations in Orange's first amended complaint fail to support a claim for

7

denial of a right to a fair trial; (5) the first amended complaint fails to allege a state law malicious prosecution claim against Martin, Shine, Hillard or Needham; (6) the first amended complaint fails to allege liability by any of the City defendants in their individual capacity; (7) the first amended complaint fails to allege a conspiracy claim; and (8) Orange cannot allege municipal liability against the City.

### 1. The Effect of Collateral Estoppel on Orange's Current Claims

The City defendants argue that Orange's present claims are barred under the doctrine of collateral estoppel because Orange has already litigated these issues, and lost, during his direct criminal appeal and petitions for post-conviction relief in Illinois state court. Orange has been before the Illinois Supreme Court three time. People v. Orange, 749 N.E.2d 932 (Ill. 2001); People v. Orange, 521 N.E.2d 69 (Ill. 1988); People v. Orange, 659 N.E.2d 935 (Ill. 1995).

The court is allowed to take judicial notice of matters in the public record, such as a decision from another court, in ruling on a Rule 12(b)(6) motion to dismiss. Howard v. City of Chicago, No. 03 C 8481, 2004 WL 2397281, at *5 (N.D. Ill. Oct. 25, 2004) (citing Doherty v. City of Chicago, 75 F.3d 318, 324 (7th Cir. 1996)). Furthermore, "a litigant may plead himself out of court by alleging (and thus admitting) the ingredients of a defense." Hobley v. Burge, No. 03 C 3678, 2004 WL 1243929, at *4 (N.D. Ill. June 3, 2004) (quoting U.S. Gypsum Co. v. Indiana Gas Co., Inc., 350 F.3d 623, 626 (7th Cir. 2003)).

Evaluation of collateral estoppel requires the court to make factual determinations that are properly considered when the court can evaluate evidence outside the plaintiff's complaint such as through a Rule 56 motion for summary judgment. Consequently, the court will not enter into an evaluation of City defendants' collateral estoppel arguments at this stage in the litigation.

8

### 2. Statute of Limitations on Orange's Claims

The City defendants' motion argues that the Count Two § 1983 claim for false arrest and imprisonment, the Count Three § 1983 claim for torture and physical abuse, the Count Four § 1983 claim for coercive interrogation, the Count Seven state law claim for false imprisonment, Count Nine state law claim for intentional infliction of emotional distress and the Count Ten state law conspiracy claim should be dismissed as time barred under the statute of limitations.

"The basic rule [is] that the statute of limitations is an affirmative defense ... [c]omplaints need not anticipate defenses; the resolution of the statute of limitations comes after the complaint stage." Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n, 377 F.3d 682, 688 (7th Cir. 2004) (citations omitted). However, a plaintiff may plead himself out of court by establishing that his claims are barred through the information he pleads in his complaint. See Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002) ("It is true that when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit.").

#### a. Statute of Limitations for Section 1983 Claims

"Section 1983 does not contain an express statute of limitations. In order to determine the proper statute of limitations for § 1983 actions, a federal court must adopt the forum state's statute of limitations for personal injury claims." Ashafa v. City of Chicago, 146 F.3d 459, 461 (7th Cir. 1998) (citing Wilson v. Garcia, 471 U.S. 261, 276 (1985)). "[S]tate law determines the limitations period and federal law governs when the claims accrue." Patterson v. Burge, 328 F. Supp. 2d 878, 896 (N.D. Ill. 2004) (citing Wilson, 471 U.S. at 280 (1985); Wilson v. Giesen, 956 F.2d 738, 740 (7th Cir. 1992)). The "appropriate statute of limitations for § 1983 cases filed in Illinois is two years

9

as set forth in 735 ILCS § 5/13-202." Ashafa, 146 F.3d at 462.

Impacting the evaluation of the statute of limitations question for § 1983 claims is the Supreme Court's decision in Heck v. Humphrey. 512 U.S. 477 (1994). The Supreme Court in Heck held that:

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determine or called into question by a federal court's issuance of a writ of habeas corpus [pursuant] to 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.

512 U.S. at 486-87 (emphasis in original).

Thus, under Heck, Orange would have been barred from bringing his § 1983 claims until Governor Ryan's pardon in January 2003 if a determination of Orange's claims would have required the evaluating court to declare his conviction or sentence to be invalid. On the other hand, if Orange's § 1983 claims did not require a court to determine whether his conviction or sentence was invalid, then Orange should have brought those claims when they accrued, most likely in the mid-1980s, and therefore the two year statute of limitations would bar Orange's current claims.

### i. Count Three: Torture and Physical Abuse & Count Four: Coercive Interrogation

The City defendants argue that Orange's Count Three claim for torture and physical abuse in violation of § 1983 and Orange's Count Four claim for coercive interrogation in violation of § 1983 are barred under the statute of limitations because Orange should have brought these claims immediately after the alleged torture occurred in 1984. In support of this argument, the City

defendants cite to Gonzalez v. Entress, in which the Seventh Circuit held that "application of excessive force at a police station violates the Constitution and is immediately actionable," 133 F.3d 551, 555 (7th Cir. 1998), and Hobley v. Burge, where Judge Aspen stated that "courts presented with allegations such as torture ordinarily conclude that such claims would have been actionable immediately because success on the claim generally is not incompatible with a subsequent conviction." No. 03 C 3678, 2004 WL 1243929, at *5 (N.D. Ill. June 3, 2004) (citing Washington v. Summerville, 127 F.3d 552, 556 (7th Cir. 1997)). Furthermore, the City defendants argue that there was strong evidence presented at Orange's trial, other than his alleged confession, that implicated Orange in the murders including the statement from Orange's codefendant, Leonard Kidd.

Orange counters that the application of Heck in this case tolls the statute of limitations, so the proper date for the commencement of the two year statute of limitations running is January 10, 2003, the date of his pardon by Governor Ryan. According to Orange, the only piece of evidence to support his conviction was his false confession that the police defendants procured from him through torture, and that but for this false confession, he would not have been convicted. Orange also questions the use of Kidd's statement as an independent source of evidence of his guilt because Orange asserts that Kidd too was tortured by the police defendants.

In order to evaluate the parties' arguments on this issue, the court shall first discuss the three other "companion" cases filed by the three other individuals, who along with Orange, were pardoned by Governor Ryan in January 2003. Governor Ryan issued pardons on January 10, 2003 to Orange, Aaron Patterson, ("Patterson"), Madison Hobley, ("Hobley"), and Stanley Howard ("Howard"). All four allege that they had been tortured by Burge and his men in a similar manner. Each has brought a civil suit similar to Orange's suit. Those cases are pending before other judges in this district. In

the other three cases motions to dismiss have already been decided.

On this point, the judges in Patterson v. Burge, 328 F. Supp. 2d 878 (N.D. Ill. 2004) (Gottschall, J.), and Howard v. City of Chicago, No. 03 C 8481, 2004 WL 2397281 (N.D. Ill. Oct. 25, 2004) (Andersen, J.), have denied a motion to dismiss § 1983 torture and coercive interrogation claims on statute of limitations grounds while one judge has granted a motion to dismiss on the statute of limitations. Hobley v. Burge, No. 03 C 3678, 2004 WL 1243929 (N.D. Ill. June 3, 2004) (Aspen, J.). All three judges applied the same standards of law but the distinguishing differences were the factual allegations made by Patterson and Howard as compared to Hobley. Patterson and Howard's complaints both alleged that the only evidence to support their convictions were the involuntary and coerced confessions procured from themselves and other victims through torture. Patterson, 328 F. Supp. 2d at 896; Howard, No. 03 C 8481, 2004 WL 2397281, at *7. However, in Hobley, Judge Aspen noted that "Hobley's claims of torture and failure to intervene, while incredibly disturbing, would not necessarily imply the invalidity of Hobley's conviction or sentence because, even according to Hobley, those tactics did not yield a confession. ... Instead, Hobley could, and did, contend that the confession was fabricated by [the] police." No. 03 C 3678, 2004 WL 1243929, at *5. Thus, Judge Aspen ruled that Hobley's claims were time barred under the statute of limitations.

In this case, Orange's claims are more akin to the allegations made by Patterson and Howard than the allegations by Hobley. Like Patterson and Howard, Orange claims that he was forced to confess through the imposition of torture and but for the torture he would not have falsely confessed and been ultimately convicted. Patterson, Howard and Orange's allegations of forced confessions procured through torture stand in contrast to Hobley statement that he did not yield to the torture and instead his confession was fabricated by the police. An evaluation of Orange's § 1983 claim in the

12

1980s, as presented by Orange in his complaint, would have forced the evaluating court to directly determine whether his conviction was invalid. That was an action a district court could not take under Heck until Orange's conviction was voided by Governor Ryan's pardon on January 10, 2003. As such, Orange could not bring his complaint under the rule in Heck until January 10, 2003, and therefore Orange has not plead himself out of court on the statute of limitations issue for Counts Three and Four. The City defendants' statute of limitations argument for these counts is unimpressive.

### ii. Count Two: False Imprisonment

The City defendants argue that Orange's § 1983 claim for false imprisonment should be barred under the two year statute of limitations. The City defendants argue that Orange's claim accrued at the time of his alleged false arrest regardless of the outcome of this trial. Orange asserts that the statute of limitations on his claim did not begin to run until his pardon and release from prison in January 2003.

As Judge Pallmeyer observed in Castillo v. Zuniga, there is a significant body of conflicting precedent within this district as to when a claim for false imprisonment accrues. No. 01 C 616, 2002 WL 398519, at *10 (N.D. Ill. Mar. 14, 2002) (citations omitted). Since the primary purpose of a motion to dismiss is to test the sufficiency of a claim and insure that the defendants have been properly put on notice of the claims, the proper resolution at this time is to deny the current motion. Instead, the defendants, if they wish, may bring this issue forward in a motion for summary judgment.

### b. Statute of Limitations for State Law Claims

The parties agree that the appropriate statute of limitations for Orange's state law claims is

13

provided under the Illinois Local Government and Governmental Employees Tort Immunity Act. 745 ILCS 10/8-101. That act provides a one year statute of limitations for the type of claims that Orange seeks to bring in this case.

### i. Count Seven: False Imprisonment Claim

As discussed above, since there is significant conflicting precedent in this district as to when a claim for false imprisonment accrues, the court will not decide this issue at this time and instead will deny the City defendants' pending motion on this point. The City defendants may bring this argument forth at a later date in a motion for summary judgment.

### ii. Count Nine: Intentional Infliction of Emotional Distress

The City defendants' motion recognizes that the judges in this district have held on a number of occasions that a state law claim for intentional infliction of emotional distress does not accrue until the state criminal proceedings are terminated. See Hobley v. Burge, No. 03 C 3678, 2004 WL 1243929, at *9 (N.D. Ill. June 3, 2004) (listing various Northern District of Illinois cases holding that the statute of limitations for intentional infliction of emotional distress under Illinois law does not commence until the criminal case is terminated). Thus, under the law of this district, the statute of limitations on Orange's intentional infliction of emotional distress claim did not begin to run until Orange's pardon in January 2003.

The City defendants, however, suggest that the rulings of this district should be reexamined in light of the Seventh Circuit's decision in Leavell v. Kieffer. 189 F.3d 492, 495 (7th Cir. 1999). They point to Judge Easterbrook's statement in Leavell that "knowledge of a wrong and an impending injury enables the victim to get litigation under way, which the victim must do as soon as possible, rather than waiting until the full consequences of the injury can be quantified – for

14

understanding all consequences may take years, so that postponing accrual of the claim until the extent of the injury is certain would make statute of limitations ineffectual." Id. at 495.

The Leavell case is factually different from this case. Leavell discusses the applications of statute of limitations in a Bivens action brought by taxpayers against the IRS employee who conducted an audit of the taxpayers. Id. at 494. Furthermore, this court cannot consider the Leavell case or other case like it because the tort of intentional infliction of emotional distress is an Illinois state law tort and since this court is applying Illinois state law on this issue, the court must follow the decisions of the Illinois Supreme Court on this area of law. The Illinois Supreme Court has held that the tort of intentional infliction of emotional distress is a continuing tort that "accrues, and the statute of limitations begins to run, at the time the last injurious act occurs or the conduct is abated." Feltmeier v. Feltmeier, 789 N.E.2d 75, 89 (Ill. 2003). Thus, under Illinois law, Orange's cause of action did not accrue until his pardon and release from prison in January 2003.

### iii. Count Ten: Conspiracy

The City defendants argue that Count Ten of Orange's complaint alleging state law conspiracy should be dismissed. The City defendants assert that a civil conspiracy claim accrues when the plaintiff first learned of the conspiracy which was during the mid-1980s for Orange. Orange's response brief does not directly respond to the City defendants' arguments regarding Count Ten. It appears therefore that Orange is conceding to the City defendants on this issue. As such, the Count Ten of Orange's complaint alleging a state law claim for conspiracy is dismissed as to the City defendants.

The City defendants also argue against a § 1983 conspiracy claim which Orange's complaint does not allege as a separate count. Orange instead incorporates the conspiracy allegations contained

in paragraphs 58-60 of his complaint into his other § 1983 claims. Since the court has rejected the City defendants' statute of limitations as to Orange's underlying § 1983 claims, the court will uphold at this time the allegations in those claims against the City defendants' statute of limitations argument on conspiracy.

### 3. Count Five: Section 1983 Due Process Claim Denial of Access to Courts

Count Five of Orange's first amended complaint alleges that the actions taken by the defendants resulted in his denial of access to the courts in violation of his Fifth and Fourteenth Amendment rights in that he has potentially forfeited several of his claims, other claims were delayed for many years and he has to proceed without key evidence which remains suppressed or has been destroyed, lost or otherwise diminished do to the lapse of time. (Dkt. No. 9 at ¶ 75). The City defendants argue that Count Five of Orange's complaint alleging that his right to access of courts through the suppression of evidence should be dismissed because it fails to state a claim upon which relief may be granted.

A claim for denial of access to the courts requires both the denial and an "underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher v. Harbury, 536 U.S. 403, 415 (2002). "The underlying cause of action ... is an element that must be described in the complaint. ... [T]he complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." Id.

Orange's denial of access to the courts claim asserts three harms that have occurred resulting

16

from the denial of access of potential forfeiture of claims, denial of being able to bring claims and potential suppression and destruction of evidence. Orange cannot bring a cause of action for denial of access for courts for a delay in his ability to bring his cause of action or potential suppression and destruction of evidence. Delay by itself is not enough since Orange will be ultimately able to bring his underlying causes of action in this or some other case. Suppression and or destruction of evidence is also not sufficient to bring a separate cause of action for denial of access to the courts because Orange can ultimately vindicate his rights through an underlying tort action for the spoliation of evidence.

Orange has a more promising, yet ultimately unsuccessful, argument with his assertion that the denial of access to the courts have resulted in a potential forfeiture of claims. If Orange can allege that he has an underlying cause of action that he was unable to bring due to denial of access to the courts, then he could have an allegation that would survive a 12(b)(6) motion. However, looking at the allegations in Orange's complaint, assuming that "all well-pleaded factual allegations in the complaint must be accepted as true and all inferences must be drawn in favor of the plaintiff, Hernandez v. City of Goshen, 324 F.3d 535, 537 (7th Cir. 2003), the court cannot fathom, and Orange has not suggested, a set of facts where the plaintiff has been forced to forfeit an underlying cause of action due to the denial of access to the courts. It appears beyond a doubt, based on the reading of the complaint, that "the plaintiff can prove no set of facts that would entitle him to relief" on a denial of access to court's claim. Id. (citing Conley v. Gibson, 355 U.S. 41, 45 (1957)). As such, this court dismisses, pursuant to Rule 12(b)(6), Count Five of Orange's first amended complaint, alleging a violation of 42 U.S.C. § 1983 due process claim for deprivation of access to courts, for failure to state a claim upon which relief may be granted.

17

### 4. Count One: Section 1983 Claim for Deprivation of Right to Fair Trial and for Wrongful Conviction

Orange alleges that the actions of the City and County defendants caused his wrongful conviction through the defendants coercing, constructing and/or fabricating false and totally unreliable statements from Orange, withholding the truth about these statements from prosecutors, judges and defense attorneys involved in Orange's case, suppressing additional exculpatory findings of torture and other evidence, giving false public statements and testimony, writing false reports, obstructing additional investigations. (Dkt. No. 9 at ¶ 62).

#### a. Suppression of Exculpatory and Exonerating Evidence

As a preliminary matter, the City defendants argue that Orange has already argued the issues of suppression of exculpatory and exonerating evidence when he brought his second petition for post-conviction relief in 2001 and these arguments were rejected by the Illinois Supreme Court. People v. Orange, 749 N.E.2d 932 (Ill. 2001). As discussed above, this court will not enter into a consideration of the potential application of res judicata or collateral estoppel at this point in the litigation because of the potential need to move beyond the pleadings and matters in the public record, and thus enter into a Rule 56 motion for summary judgment proceeding, in order to fully evaluate those issues.

"Section 1983 provides a remedy for certain trial-related government misconduct, in particular Brady violations, that violate the due process rights of an accused." Rodriguez v. Woodall, No. 03 C 3880, 2004 WL 2583883, at *3 (N.D. Ill. Nov. 12, 2004) (citing Newsome v. McCabe, 256 F.3d 747 (7th Cir. 2001) ("Newsome I"); Ienco v. City of Chicago, 286 F.3d 994, 997-98 (7th Cir. 2002)). "In Brady the United States Supreme Court held that there is a constitutional

18

due process violation if the prosecution withholds exculpatory evidence at trial." Kittler v. City of Chicago, No. 03 C 6992, 2004 WL 1698997, at *5 (N.D. Ill. July 27, 2004) (citing Brady v. Maryland, 373 U.S. 83, 86 (1963)).

"A Brady violation has three components: (1) the evidence at issue must be favorable to the accused, meaning either exculpatory or impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensured." Patterson v. Burge, 328 F. Supp. 2d 878, 889 (N.D. Ill. 2004) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). A Brady violation may occur before, during or after the criminal trial. Id. (citing Manning v. Miller, 355 F.3d 1028, 1033 (7th Cir. 2004) (before trial); Newsome v. McCabe, 319 F.3d 301, 304-05 (7th Cir. 2003) ("Newsome II") (during trial); Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (after trial)). "The duty to turn over exculpatory evidence applies to investigating officers as well as prosecutors." Rodriguez, No. 03 C 3880, 2004 WL 2583883, at *4 (citing Kyles v. Whitley, 514 U.S. 419, 438 (1995); Manning, 355 F.3d at 1034; Newsome I, 256 F.3d at 752)).

Orange's first amended complaint alleges actions by the City defendants in violation of Brady. The City defendants argue that no Brady violation has occurred because Orange knew about the exculpatory evidence relating to his alleged torture and forced confession because he was present for the alleged government misconduct. There was nothing to disclose to Orange, according to the defendants' reasoning, so there can be no Brady violation.

Judge Gottschall rejected a similar argument by the defendants in the Patterson case. According to Judge Gottschall, Patterson alleged that the defendants in that case denied him a fair trial in violation of Brady not just by their acts of alleged torture in the interrogation room, but their acts taken outside the interrogation in places like the courtroom. Patterson v. Burge, 328 F. Supp.

2d at 889 ("Most notably, in addition to charging defendants with hiding the fact that his confession was coerced and fabricated – an allegation which by itself might not state a Brady claim ... – Patterson accuses [the] defendants of obstructing justice and violating his rights to a fair trial through actions they took outside the interrogation room.").

This court joins in Judge Gottschall's analysis of the circumstances. The defendants allegedly caused Orange to experience an unfair trial through their false testimony and other acts taken to cover up the torture obtained confession from Orange. They would have had an obligation under Brady to disclose their other alleged acts of deceit to Orange in order to ensure him a fair trial. The fact that Orange was present for the alleged torture has no impact on the defendants duty to disclose other exculpatory evidence.

### b. Immunity for Concealment of False Testimony

The City defendants argue that to the extent Count One is based on an allegation of false testimony from one or more defendants, that aspect of the claim is barred by absolute immunity as recognized in Briscoe v. LaHue. 460 U.S. 325 (1983); see also House v. Belford, 956 F.2d 711, 720 (7th Cir. 1992). Orange, citing to Cervantes v. Jones, argues that absolute immunity does not apply to a witness when that witness is considered to be the complaining witness. 188 F.3d 805, 809-10 (7th Cir. 1999). "A complaining witness is one 'who actively instigated or encouraged the prosecution of the plaintiff.'" Patterson v. Burge, 328 F. Supp. 2d 878, 891 (N.D. Ill. 2004) (quoting Curtis v. Bembenck, 48 F.3d 281, 285 (7th Cir. 1995).

Although the Seventh Circuit recognized in Gauger v. Hendle, 349 F.3d 354, 358 (7th Cir. 2003), that Cervantes was overruled in Newsome 1, 256 F.3d 747, 751 (7th Cir. 1999), the Seventh Circuit was clear to state that Newsome I overruled Cervantes on other grounds than the absolute

immunity issue. The Gauger court cited to Malley v. Briggs, a case in which the Supreme Court rejected a claim of absolute immunity. 475 U.S. 335, 340-41 (1986). The Seventh Circuit's decision in Newsome I appears to have rejected Cervantes's reasoning involving the unrelated issue of how to properly evaluate a malicious prosecution claim and did not consider absolute immunity or the complaining witness exception to absolute immunity. 256 F.2d at 751.

In Ineco v. City of Chicago, the Seventh Circuit explained that "in [Newsome I], we withdrew dicta" from four of its previous opinions, including Cervantes, on the malicious prosecution issue. 286 F.3d 994, 999 n.4 (7th Cir. 2002). The Ineco court then went on to later discuss exceptions to absolute immunity, and although the court did not consider the complaining witness exception, the Ineco court positively cited the portion of Cervantes that discusses the complaining witness exception and left it to the district court to examine the issue on remand. Id. at 1000 n.9.

It therefore appears to this court that the Seventh Circuit's decision in Newsome I, although overruling Cervantes on the malicious prosecution issue, did not impact Cervantes holding on the complaining witness exception to absolute immunity. Orange can assert this exception to the City defendants' claim of absolute immunity in order to defeat their 12(b)(6) motion. Furthermore, even if the complaining witness exception to absolute immunity of Cervantes has not survived Newsome I, the City defendants' absolute immunity claim only covers in court testimonial statements. See Ineco, 286 F.3d at 1000 ("[N]o absolute testimonial immunity attaches to the actions of the officers outside of trial.").

### c. City Defendants' Characterization of Orange's Due Process Claim

The City defendants argue that Orange's claim for deprivation of a right to a fair trial and

wrongful conviction are really nothing more than false arrest and malicious prosecution claims. They further argue that under the Seventh Circuit's decision in McCann v. Mangialardi, "the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution." 337 F.3d 782, 786 (7th Cir. 2003) (citations omitted).

As the Seventh Circuit explained in Gauger v. Hendle, "malicious prosecution is not a constitutional tort unless the state provides no remedy for malicious prosecution ... [b]ut all we held is that there is no constitutional tort of malicious prosecution as such." 349 F.3d 354, 359 (7th Cir. 2003). As Judge Gottschall explained in Patterson, a plaintiff can have a separate cause of action alleging constitutional violations that are separate and distinct from a false arrest and malicious prosecution claim. 328 F. Supp. 2d at 890. As in Patterson, Orange is alleging that his Fourteenth Amendment rights were violated and this violation is separate and distinct from the state tort claim of malicious prosecution. Therefore, Orange has alleged enough to survive a Rule 12(b)(6) motion.

### 5. Claims against Martin, Shine, Hillard and Needham in their Personal Capacity

Martin, Shine, Hillard and Needham argue that they cannot be liable under Count Eight for the state law claim of malicious prosecution because they assumed their respective positions in the Chicago Police Department long after Orange was tried and convicted of the four murders. "However, actions by government officials which influence a plaintiff's post-conviction proceedings are not immune from suit." Patterson, 328 F. Supp. 2d at 900 (citing Houston v. Partee, 978 F.2d 362, 368 (7th Cir. 1992)). Orange alleges, as did Patterson and Howard, that Martin, Shine, Hillard and Needham participated in covering up what occurred at Area 2 including the suppression of reports on the alleged torture. As such, for the purposes of evaluating the complaint under Rule 12(b)(6), Orange can bring a claim for malicious prosecution because according to his complaint

22

Martin, Shine, Hillard and Needham's actions impacted his post-conviction proceedings and limited his ability to free himself from prison.

Martin, Shine, Hillard and Needham also argue that they cannot be held personally liable for the actions of their subordinates for a § 1983 under respondeat superior. Instead, they argue that there must be a causal connection between the alleged misconduct and the individual defendant.

"Individual liability under § 1983 is predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional violation. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." Searles v. Bd of Educ. of the City of Chicago / Chicago Sch. Reform Bd. of Trs., No. 03 C 8966, 2004 WL 1474583, *4 (quoting Jenkins v. Keating, 147 F.3d 577, 583 (7th Cir. 1998); Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983)) (emphasis in original).

Martin, Shine, Hillard and Needham's argument would be successful if Orange is looking to sue them in their personal capacity exclusively for the actions taken by others such as the alleged torture by Burge and other police officer defendants. However, Orange's claims include allegations of individual actions by Martin, Shine, Hillard and Needham. In specific, Orange asserts that Martin, Shine, Hillard and Needham participated in covering up alleged torture, failing to investigate and suppressing of information. This same reasoning would also apply to Orange's state law claims since he frames his complaint in a way that alleges individual actions by Martin, Shine, Hillard and Needham.

### 6. Sufficiency of the Allegations in the Complaint against the Police Officers

The police officer defendants argue that Orange's complaint does not satisfy the notice pleading requirements of the federal rules because the complaint does not identify any specific

individual police officer with any specific alleged act of misconduct. They request the court to dismiss the claims relating to the alleged misconduct on January 12, 1984.

The notice pleading requirement of the federal rules, as established in Rule 8, merely requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The civil rules, as both the Supreme Court and [the Seventh Circuit] have emphasized repeatedly, establish a system of notice pleading. The plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply." Shah v. Inter-Continental Hotel Chicago Operating Corp., 314 F.3d 278, 282 (7th Cir. 2002). Orange's complaint satisfies the notice pleading requirements of Rule 8.

### 7. Conspiracy Claims

The City defendants argue that Orange has failed to properly allege either a federal § 1983 conspiracy claim or a state law conspiracy claim. Orange does not bring a separate § 1983 conspiracy count but instead provides a general allegation of a conspiracy to violate his constitutional rights (Dkt. No. 9 at ¶ 58), and to take the various unlawful acts. (Id. at ¶ 59). Orange alleges that the conspiracy continues through the present date. (Id. at ¶ 60). Orange does allege a state law conspiracy claim in Count Ten, as mentioned earlier, but Orange does not challenge the City defendants' statute of limitations argument.

The first argument of the City defendants is that there can be no conspiracy when the object of the conspiracy does not violate the Constitution. Their argument is based on an assumption that this court would grant their motions to dismiss the various § 1983 claims. However, this court has found that Orange's complaint brings various § 1983 claims. The result is that the City defendants' argument falls apart since Orange has alleged actions by the City defendants in violation of the

24

Constitution.

The City defendants' second argument is that a bare allegation of conspiracy in a complaint is not sufficient but that facts in support of the conspiracy must be alleged. Conspiracy is not one of the special pleading matters that require heightened pleading in Rule 9. The traditional notice pleading rules apply since the courts cannot supplement the listed items in Rule 9 requiring heightened pleading. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993).

### 8. Count Six: Monel Claim Against the City of Chicago

The City argues that the court should dismiss Orange's Monell claim against it. "A municipality is liable under § 1983 when a deprivation of constitutional rights is caused by a municipal policy or custom." Franklin v. City of Evanston, 384 F.3d 838, 843 (7th Cir. 2004) (citing Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658 (1978)). "Municipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents." Eversole v. Steele, 59 F.3d 710, 715 (7th Cir. 1995) (quoting Auriemma v. Rice, 957 F.2d 397, 399 (7th Cir. 1992)).

To meet his ultimate burden for a Monell claim, the Orange must show that (1) the municipality had an express policy, that when enforced, caused the constitutional deprivation, (2) the municipality had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law, or, (3) the plaintiff's constitutional injury was caused by a person with final policymaking authority. McCormick v. City of Chicago, 230 F.3d 319, 324 (7th Cir. 2000). A Monell claim at the pleading stage is subject to the notice pleading standard of Rule 8. See Id. at 323-24 ("The

Supreme Court has made it very clear that federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability.") (citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993)).

Orange has satisfied his pleading requires for Monell purposes. This court has held, for purposes of a motion to dismiss, that Orange has alleged constitutional deprivations by City employees. Orange's first amended complaint also states that the City had various de facto policies, customs and practices. (Dkt. No. 78). Orange's first amended complaint successfully alleges a Monell claim against the City of Chicago.

## B. The County's Motion to Dismiss

The County's motion argues for dismissal of Orange's first amended complaint on the grounds that (1) the court lacks subject jurisdiction over any § 1983 against the County, State's Attorney's Office or individual states attorneys because these claims are barred under the Eleventh Amendment and the Illinois Court of Claims has exclusive jurisdiction over Orange's state law claims; (2) Former ASA Dernach is shielded under absolutely prosecutorial immunity; (3) Orange cannot bring a claim against Devine in his individual capacity because Devine was not elected as Cook County State's Attorney until a decade after the incident; (4) Orange cannot bring a claim for false arrest and false imprisonment because none of the County defendants were involved in his arrest or detention; (5) Orange cannot bring a claim for deprivation of access to the courts because he cannot identify a claim which has been lost or for which he cannot receive recovery in the present lawsuit; (6) The conspiracy claims in Counts One, Two, Three, Four, Five and Ten are barred by prosecutorial immunity; (7) Orange is precluded under res judicata from relitigating issues that have already been litigated before and decided by the Illinois Supreme Court in his post-conviction

26

petitions; (8) Orange fails to state a claim upon which relief may be granted for indemnification against the County under Illinois statutory and common law.

## 1. The Court's Subject Matter Jurisdiction over Orange's Claims

### a. Eleventh Amendment Sovereign Immunity

The County asserts that this court lack subject matter jurisdiction over Orange's claims against it and the prosecutors because of the Eleventh Amendment and due to the fact that the Illinois Court of Claims has exclusive jurisdiction over Orange's state law claims. The court shall determine whether it has subject matter jurisdiction over the County and associated county prosecutors before considering Orange's other County related claims.

"The Eleventh Amendment prohibits federal courts from deciding suits brought by private litigants against states or their agencies, and that prohibition extends to state officials acting in their official capacity." Garcia v. City of Chicago, 24 F.3d 966, 968 (7th Cir. 1994). The prohibition against a suit seeking relief state officers in their official capacity is limited to retrospective monetary relief, See Edelman v. Jordan, 415 U.S. 651, 659 (1974), and does not limit a federal court's power to award prospective equitable relief. See Ex Parte Young, 209 U.S. 123 (1908). The Eleventh Amendment does not, however, bar suits against state officials in their individual capacity. Hafer v. Melo, 502 U.S. 21, 30-31 (1992). The Supreme Court in Hafer explained that a suit against a state official in his or her official capacity is a suit that is really aimed at the state treasury while a suit against an official in his or her individual capacity is one in which payment will come from the individual's personal pocket. Id. at 30-31. Furthermore, "the fact that the state chooses to indemnify its employees who are sued in federal court is irrelevant, because it is the voluntary choice of the state, not a cost forced on it by the federal-court suit." Luder v. Endicott, 253 F.3d 1020, 1023 (7th

27

Cir. 2001) (internal citations omitted).

A federal court must look to state law to determine whether a local government entity, such as a county, must be treated as an entity of the State for Eleventh Amendment purposes. Mount Healthy City Sch. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). The Seventh Circuit in Garcia determined, based on Illinois law as interpreted by the Illinois Supreme Court, that under Illinois law, a county state's attorney is a state official for Eleventh Amendment purposes. 24 F.3d 966, 968 (7th Cir. 1994). Thus, this court must also extent the protection of the Eleventh Amendment to employees of state's attorneys sued in their official capacity and the underlying State's Attorney's Office and County for Eleventh Amendment purposes because a suit for monetary relief against the State's Attorney or a member of his staff in their official capacity or the State's Attorney's Office is really a suit against the County's treasury.

"There are two well-established exceptions to the rule of state sovereign immunity: (1) a state may waive the protections of the Eleventh Amendment and thereby consent to suit in federal court, or (2) Congress may use its enforcement powers under the Fourteenth Amendment to abrogate the states' Eleventh Amendment immunity." Miraki v. Chicago State Univ., 259 F. Supp. 2d 727, 730 (N.D. Ill. 2003) (citing Kroll v. Bd. of Trs., 934 F.2d 904, 907 (7th Cir. 1991)).

"A State may effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving immunity to suit in the context of a particular federal program." Blalock v. Illinois Dep't of Human Servs., 349 F. Supp. 2d 1093, 1096 (N.D. Ill. 2004) (quoting Nelson v. Illinois, 36 F.3d 684, 690 (7th Cir. 1994); Bartley v. U.S. Dep't of the Army, 221 F. Supp. 2d 934, 950 (N.D. Ill. 2002)). The state must make a "clear declaration" that is "unequivocally expressed" to waive its Eleventh Amendment sovereign immunity and consent to

the federal court's jurisdiction. College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 674 (1999) (citing Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 99 (1984); Great Northern Life Ins. Co v. Read, 322 U.S. 47, 54 (1944)).

Illinois has established a court of claims that "shall have exclusive jurisdiction to hear and determine ... all claims against the State for time unjustly served in prisons of this State where the person imprisoned shall receive a pardon from the governor stating that such pardon is issued on the ground of innocence of the crime for which they were imprisoned." 705 ILCS 505/8 (c). See e.g., Osteen v. Henley, 13 F.3d 221, 224 (7th Cir. 1993). The establishment of a forum with exclusive jurisdiction to hear this type of suit conflicts with any type of explicit waiver of sovereign immunity. The court cannot consider Illinois to have waived its sovereign immunity in this type of matter so the court must next turn to whether Congress has properly abrogated the State's Eleventh Amendment immunity.

Although a state has sovereign immunity under the Eleventh Amendment, "Congress may, however, abrogate such immunity in federal court if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 726 (2003); see e.g., Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996); Fitzpatrick v. Bitzer, 427 U.S. 445 (1976). Orange's first amended complaint only relies upon 42 U.S.C § 1983. However in Quern v. Jordan, the Supreme Court held that Congress did not intend to abrogate the states' Eleventh Amendment sovereign immunity when it passed § 1983. 440 U.S. 332, 342-45 (1979).

Consequently, since Orange's first amended complaint seeks retrospective monetary compensation for the past harms he alleged have been done to him, county state's attorneys are

29

agents of the state of Illinois for Eleventh Amendment purposes. Because Illinois has not consented to suit and Congress did not properly abrogate the states' sovereign immunity under § 1983, this court holds that it lacks subject matter jurisdiction to hear Orange's claims as they relate to the County, the State's Attorney's Office and Dernach, Doe, and Devine in their official capacities. The Eleventh Amendment, however, does not deprive this court of subject matter jurisdiction over Orange's claims against Dernach, Doe or Devine brought against them in their individual capacity. Thus, the court will evaluate Dernach and Devine's other objections to Orange's first amended complaint.

### b. Illinois Court of Claims

Dernbach and Devine argue that any claims against them must be litigated before the Illinois Court of Claims because under 705 ILCS 505/8 that court has exclusive jurisdiction over the type of claims brought by Orange. In interpreting 705 ILCS 505/8, the Illinois Supreme Court has instructed that "all claims against the state for damages sounding in tort must be brought in the Court of Claims – no other tribunal, including our circuit courts, has jurisdiction of any such claim." Fritz v. Johnston, 807 N.E.2d 461, 466 (Ill. 2004). "The determination of whether an action is in fact a suit against the State turns upon an analysis of the issues involved and the relief sought, rather than the formal designation of the parties. An action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability." Id. (quoting Currie v. Lao, 592 N.E.2d 977 (1992)). "Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority, and in those instances an action may be brought in circuit court." Healy v. Vaupel, 549 N.E.2d 1240,

30

1247 (Ill. 1990) (citing <u>Senn Park Nursing Center v. Miller</u>, 470 N.E.2d 1029 (Ill. 1984)).

Orange's allegations against Dernbach, Devine and ASA Doe relate to actions clearly outside their authority as state's attorneys. Orange alleges that Dernbach, Devine, and ASA Doe participated in actions that deprived him of various constitutional rights. Therefore, the Illinois Court of Claims exclusive jurisdiction does not apply to these claims. <u>See</u> <u>Patterson v. Burge</u>, 328 F. Supp. 2d 878, 887 (N.D. Ill. 2004).

### 2. Former ASA Dernbach's Claim of Absolute Prosecutorial Immunity

Former ASA Dernbach asserts that he is absolutely immune for suit under § 1983 because he was present at the Area 2 police station in his role as an Assistant State's Attorney when Burge and the other police officers were allegedly torturing Orange. Dernbach asserts that he was present at the Area 2 police station for the sole purpose of carrying out his prosecutorial duty of determining whether a crime would be charged against Orange. Orange counters that Dernbach and the Doe ASA were present at the Area 2 police station to participate in a coercive interrogation, failed to stop the continuing coercion and participated in the fabrication and manufacturing of evidence in the earliest stages of the state's case against Orange.

"Absolute immunity shields prosecutors from damages when they are sued under § 1983 for initiating and prosecuting the state's case." <u>Hampton v. City of Chicago</u>, 349 F. Supp. 2d 1075, 1081 (N.D. Ill. 2004) (citing <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431 (1976)). "Immunity does not rest on an individual's status as a prosecutor, but 'is ground in the nature of the functions he was performing in the case.'" <u>Patterson v. Burge</u>, 328 F. Supp. 2d 878, 892 (N.D. Ill. 2004) (quoting <u>Houston v. Partee</u>, 978 F.2d 362, 366 (7th Cir. 1992)).

The court cannot say as a matter of law that Orange "can prove no set of facts that would

31

entitle him to relief." Hernandez v. City of Goshen, 324 F.3d 535, 537 (7th Cir. 2003) (citing Conley v. Gibson, 355 U.S. 41, 45 (1957)). Orange's position in his first amended complaint is that Dernbach was complicate in the alleged events at the Area 2 police station and covering up those events. Since Orange alleges that Dernbach performed investigatory and interrogation functions that are normally performed by the police, Dernbach cannot assert absolute prosecutorial immunity to defeat Orange's complaint at this stage in the litigation. Patterson, 328 F. Supp. 2d at 892-93 (citing Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Hampton v. City of Chicago, 484 F.2d 602, 608 (7th Cir. 1973); Pippin v. Daley, No. 88 C 150, 1988 WL 56177, at *2 (N.D. Ill. May 23, 1988)). The County defendants are also unable to obtain dismissal of Orange's complaint at this stage in the litigation basis of quasi-judicial immunity because a consideration of that immunity would also require an evaluation of the factual tasks performed by the County defendants.

### 3. Orange's Claim Against Devine in Devine's Personal Capacity

Devine challenges Orange's claims brought against him in his personal capacity because Devine was not present at the Area 2 police station when Orange was allegedly tortured. Devine notes that he was not elected to the position of Cook County State's Attorney until a decade after the alleged incident. He also provides a filing and affidavit he submitted to Judge Gottschall in the Patterson case to support his lack of personal involvement.

Orange's first amended complaint, when evaluated under the Rule 12(b)(6) does successfully state claims against Devine in his personal capacity upon which relief may be granted. Orange has alleged that Devine has made public statements defaming him. Furthermore, Orange has alleged that Devine took actions while he was in private practice during his representation of Burge and then later as the State's Attorney of Cook County to deny Orange his constitutional rights. Devine has

32

supplied his affidavit to show that he had no personal involvement in Orange's arrest or prosecution. However, at this stage in the litigation it is not appropriate for the court to consider the parties' factual disputes. Orange has filed a motion to strike the exhibits, including the affidavit, attached by Devine to the County's motion to dismiss. (Dkt. No. 61). The court will grant Orange's motion to strike the exhibits as it relates the affidavit provided by Devine. It is not appropriate for the court to consider matters outside the pleadings and public record at this stage in the litigation. Such materials can be considered in connection with a motion for summary judgment but not a motion to dismiss.

### 4. Counts Two and Seven: False Arrest and False Imprisonment against Dernbach and Doe

Count Two alleges a violation of § 1983 for false arrest and false imprisonment and Count Seven alleges a state law claim for false imprisonment. The County defendants allege that Count Two and Seven must be dismissed as to Dernbach and Doe because they did not participate in Orange's arrest. Orange responds that although the police officer defendants took Orange to the Area 2 police station, Dernbach and Doe participated in actions that led to Orange's formal arrest, charging, and false imprisonment.

Orange's allegations against Dernbach and Doe are sufficient as they relate to the false imprisonment since they allegedly participated in the prosecution of Orange. There is an open factual question as to when Orange was arrested, since Orange's complaint does not allege when his formal arrest occurred. As with the issue discussed in the previous section of the opinion, since there is a factual dispute, the court cannot resolve the question at the motion to dismiss stage. Dernbach, after further exploring the issue through discovery, may present this issue again, if he wishes, in connection with a motion for summary judgment.

33

### 5. Count Five: Section 1983 Due Process Claim Denial of Access to Courts

The County defendants argue that Orange's claim for denial of access to courts should be dismissed. This court has already evaluated the City defendants' arguments on this issue and held that Orange's complaint fails to state a claim upon which relief may be granted on this issue. The reasoning applied by this court to the City defendants' motion on this issue will be applied to the County defendants motion and Count Five is dismissed.

### 6. Conspiracy Claims

The County defendants seek to dismiss Orange's federal and state conspiracy claims for a variety of reasons. The County defendants first argue that the conspiracy claim is barred under the doctrine of absolute immunity. This court has already determined that the County defendants are not entitled to a finding of absolute immunity at this stage in the litigation. That argument will not defeat Orange's conspiracy allegations at this stage. The County defendants also argue that conspiracy is not available to Orange because the underlying claims that he asserts are not available to him. However, this court has only dismissed Orange's denial of access to court claim. Orange can bring a conspiracy claim based on this other remaining allegations.

### 7. Application of Collateral Estoppel and Res Judicata

The County defendants argue that Orange is barred under collateral estoppel and res judicata from bringing his claims because they have been previously decided and rejected by the Illinois Supreme Court. Furthermore, the County defendants argue that Orange is barred from alleging he told Dernbach about the torture because Orange testified under oath at this trial that he did not inform Dernbach of any torture. As discussed earlier in this opinion, considering the City defendants' collateral estoppel and res judicata arguments, the evaluation of these arguments would

34

require the court to consider factual issues which are better left not done during a motion to dismiss. The County defendants may argue these factual questions at a later date such as through a motion for summary judgment.

### 8. Count Twelve: 745 ILCS 10/9-102 and Common Law Claim for Indemnification

Orange argues that this first amended complaint asserts that Dernbach, Doe and Devine committed their actions within the scope of their employment and therefore he can bring a claim for respondeat superior against the State's Attorney's Office and an indemnification claim against the County. As discussed above, the Eleventh Amendment deprives this court of jurisdiction over the County and the State's Attorney's Office as it relates to retrospective monetary relief. Therefore, the County and State's Attorney's Office are dismissed from Count Twelve.

### C. The County's Motion to Stay Discovery

The County defendants have filed a superceding motion on January 28, 2005 to stay discovery (Dkt. No. 50), superceding the County's prior motion to stay discovery filed September 10, 2004. (Dkt. No. 41). The current motion requests this court to bar discovery until this court ruled on the County defendants arguments for absolute prosecutorial immunity within its motion to dismiss. The court has considered and rejected the County defendants' absolute prosecutorial immunity claims as they relate to the County defendants' motion to dismiss. Therefore, the County defendants' motion to bar discovery filed January 28, 2005 (Dkt. No. 50), is now moot. The County's prior motion to stay discovery filed September 10, 2004, (Dkt. No. 41) which was superceded by the County's motion of January 28, 2005, is also moot.

35

## CONCLUSION

For the reasons stated herein, this court grants in part and denies in part the City defendants' joint motion to dismiss of July 29, 2004 (Dkt. No. 35, 37), and grants in part and denies in part the superceding motion to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) of January 28, 2005 filed by defendants Cook County Illinois, Cook County State's Attorney's Office, Richard A Devine and former ASA Dennis Dernbach. (Dkt. No. 50, 53).

Count Five of Orange's first amended complaint (Dkt. No. 9 at 20), entitled "42 U.S.C. § 1983 Due Process Claim for Deprivation of Access to Courts" is dismissed as to all defendants pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Count Ten of Orange's first amended complaint (Dkt. No. 9 at 28) alleging a state law claim for conspiracy is dismissed as to the City defendants under the statute of limitations.

Defendants Cook County, Illinois and Cook County State's Attorney Office are dismissed as defendants from this action in its entirety pursuant to Rule 12(b)(1) because the Eleventh Amendment deprives this court of subject matter jurisdiction to provide retrospective monetary relief, the only relief Orange's first amended complaint requests. Defendants Cook County State's Attorney Richard Devine, Former Assistant State's Attorney Dennis Dernbach and Assistant State's Attorney John Doe as sued in their official capacities are also dismissed from this action but these same defendants remain as defendants in this action in their individual capacities. It appears to the court that its decision on the Eleventh Amendment issue would qualify as an interlocutory decision as established under the criteria in 28 U.S.C. § 1292 (b). The court would be amenable to entertain a motion from the plaintiff, with an appropriate opportunity for a response from the County

36

defendants, for a finding of appealability pursuant to 28 U.S.C. § 1292 (b).

Plaintiff Orange's Motion to Strike Exhibits Attached to County Defendants' Superceding Motion to Dismiss filed March 4, 2005 (Dkt. No. 61), is granted. Defendant County's motions to stay discovery filed September 10, 2004 (Dkt. No. 41), and superceding motion to stay discovery filed January 28, 2005 (Dkt. No. 50), are moot.

Counsel for the parties are urged to continue to discuss settlement. The case is set for a report on status at 9:00 a.m. on April 21, 2005. The date for the filing of the remaining defendants' answer will be set at that status report.

ENTER:

James F. Holderman

JAMES F. HOLDERMAN
United States District Judge

DATE: March 30, 2005