

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LEROY ORANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-C-00168 |
| | ) | |
| Former Chicago Police Lt. JON BURGE; | ) | Judge Ronald A. Guzman |
| Former CPD detectives LEONARD BAJENSKI, | ) | |
| DAVID DIOGUARDI, ROBERT FLOOD, | ) | Magistrate Judge Sidney Schenkier |
| RAYMOND MADIGAN, DENNIS MCGUIRE, | ) | |
| RAYMOND MCNALLY, and DANIEL MCWEENY; | ) | |
| THE ESTATE of former detective JOHN MCCABE; | ) | |
| former ASA DENNIS DERNBACH; States Attorney | ) | |
| RICHARD DEVINE; ASA JOHN DOE; former CPD | ) | |
| Superintendent TERRY HILLARD; former Chicago | ) | |
| Police Superintendent LEROY MARTIN; former OPS | ) | |
| Director GAYLE SHINES; aide to the Superintendent, | ) | |
| THOMAS NEEDHAM; the CITY OF CHICAGO, | ) | |
| ILLINOIS, and the COOK COUNTY STATE'S | ) | |
| ATTORNEY'S OFFICE, | ) | |
| | ) | |
| Defendants. | ) | |

TO:   SEE ATTACHED SERVICE LIST

## NOTICE OF FILING

**PLEASE TAKE NOTICE** that on June 23, 2005, Counsel for Certain Defendants, Jon Burge, Leonard Bajenski, David Dioguardi, Robert Flood, Raymond Madigan, Dennis McGuire, Raymond McNally, and Daniel McWeeny, filed **Defendant Jon Burge's Answer to Plaintiff's First Amended Complaint** in the Northern District of Illinois, Eastern Division, 219 S. Dearborn, Chicago, Illinois, a copy of which is hereby served upon each party listed on attached service list.

Respectfully submitted,

Richard T. Sikes, Jr.
Richard B. Levy
Michael P. Kornak
Terrence J. Sheahan
Jennifer L. Koger
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606-6677
312/360-6000

*Counsel for Certain Defendants, Jon
Burge, Leonard Bajenski, David
Dioguardi, Robert Flood, Raymond
Madigan, Dennis McGuire, Raymond
McNally, and Daniel McWeeny*

Dated: June 23, 2005

612024

## CERTIFICATE OF SERVICE

The undersigned, being one of the attorneys of record in the above cause, certifies that he this day caused a copy of the **NOTICE OF FILING** and **DEFENDANT JON BURGE'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT** to be served upon the attorneys listed on the attached Service List, by depositing the same in the U.S. Mail located at 311 South Wacker Drive, Chicago, Illinois 60606, proper postage prepaid, prior to 5:00 p.m. on this 23rd day of June, 2005.

Terrence J. Sheahan

612024

## SERVICE LIST
### *Orange v. Burge, et al.*
### 04 C 00168

| | |
|---|---|
| Thomas F. Geraghty<br>Cathryn Stewart Crawford<br>Northwestern University School of Law<br>Legal Clinic<br>357 East Chicago Avenue<br>Chicago, Illinois 60611<br>Fax: (312) 503-8977<br>***Counsel for Plaintiff*** | Michael Edward Deutsch<br>G. Flint Taylor, Jr.<br>Joey L. Mogul<br>People's Law Office<br>1180 North Milwaukee Avenue<br>Chicago, Illinois 60622<br>Fax: (773) 235-6699<br>***Counsel for Plaintiff*** |
| Jack Samuel Tenenbaum<br>Sachnoff & Weaver, Ltd.<br>30 S. Wacker Drive<br>29th Floor<br>Chicago, Illinois 60606<br>Fax: (312) 207-6400<br>***Counsel for Plaintiff*** | Paul A. Castiglione<br>Patrick T. Driscoll, Jr.<br>Stephen L. Garcia<br>Louis R. Hegeman<br>Jeffrey S. McCutchan<br>Cook County State's Attorney's Office<br>500 Richard J. Daley Center<br>50 West Washington Street<br>Chicago, Illinois 60602<br>Fax: (312) 603-5735<br>***Counsel for Cook County, Illinois, Cook County State's Attorney's Office, and Richard A. Devine*** |
| Terrence M. Burns<br>Harry N. Arger<br>Paul A. Michalik<br>Daniel M. Noland<br>Dykema, Gossett, Rooks, Pitts PLLC<br>10 S. Wacker, Suite 2300<br>Chicago, Illinois 60606<br>Fax: (312) 876-1155<br>***Counsel for City of Chicago, Thomas Needham and Terry Hillard*** | Patricia C. Bobb<br>Patricia C. Bobb & Associates<br>833 W. Jackson Blvd.<br>Suite 200<br>Chicago, Illinois 60607<br>Fax: (312) 829-3367<br>***Counsel for Dennis Dernbach*** |
| Martin P. Greene<br>Eileen M. Letts<br>Kevin T. Lee<br>Terry Miller<br>Greene and Letts<br>111 Washington Street<br>Suite 1650<br>Chicago, Illinois 60602<br>Fax: (312) 346-4571<br>***Counsel for Leroy Martin and Gayle Shines*** | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEROY ORANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Former Chicago Police Lt. JON BURGE; | ) | |
| Former CPD detectives LEONARD BAJENSKI, | ) | Case No. 04 C 00168 |
| DAVID DIOGUARDI, ROBERT FLOOD, | ) | |
| RAYMOND MADIGAN, DENNIS MCGUIRE, | ) | |
| RAYMOND MCNALLY, and DANIEL MCWEENY; | ) | |
| THE ESTATE of former detective JOHN MCCABE; | ) | |
| former ASA DENNIS DERNBACH; States Attorney | ) | Judge Ronald Guzman |
| RICHARD DEVINE; ASA JOHN DOE; former CPD | ) | |
| Superintendent TERRY HILLARD; former Chicago | ) | |
| Police Superintendent LEROY MARTIN; former OPS | ) | |
| Director GAYLE SHINES; aide to the Superintendent, | ) | |
| THOMAS NEEDHAM; the CITY OF CHICAGO, | ) | |
| CHICAGO; COOK COUNTY, ILLINOIS; and | ) | |
| the COOK COUNTY STATE'S ATTORNEY'S | ) | |
| OFFICE, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT JON BURGE'S ANSWER**
**TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Jon Burge ("Defendant") answers Plaintiff's First Amended Complaint

as follows:

**1.** **This is a civil rights action brought pursuant to 42 U.S.C. § 1983 et**
**seq.; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the**
**United States; and pendent jurisdiction, as codified in 28. U.S.C. § 1367(a).**

**ANSWER:** Defendant admits that Plaintiff filed this lawsuit pursuant to 42

U.S.C. § 1983. Defendant also admits that the First Amended Complaint *avers* purported

violations of Plaintiff's constitutional rights and Illinois state statutes.

1

2.    This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b).  The parties reside, or, at the time the events took place, formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

**ANSWER:**    Defendant denies that he resides in this judicial district.  Defendant

is without knowledge or information sufficient to form a belief as to the truth or falsity of

Plaintiff's averment concerning the other defendants' residence.    The remaining

averments in this Paragraph purport to set forth conclusions of law to which no response

is required.

## II.    PARTIES

3.    Plaintiff Leroy Orange is a fifty-two year old African-American man, a resident of the City of Chicago and Cook County, and a citizen of the United States.

**ANSWER:**    Defendant is without knowledge or information sufficient to form

a belief as to the truth or falsity of Plaintiff's averments that he is fifty two years old, that

he is of African-American descent, that he is a resident of the City of Chicago or that he

is a citizen of the United States.

4.    Defendant Jon Burge was a duly appointed and sworn Chicago Police Lieutenant and the commanding officer of Chicago Police Area 2 Detectives Violent Crimes Unit.  Burge was the commanding officer of Defendants Leonard Bajenski, David Dioguardi, Robert Flood, Raymond Madigan, John McCabe, Dennis McGuire, Raymond McNally and Daniel McWeeny, and engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.  Defendant Burge engaged in a pattern and practice or torture and brutality himself, and also supervised, encouraged, sanctioned, condoned and ratified brutality and torture by other detectives, including, but not limited to, the police Officer Defendants named herein.  In 1988, Burge was promoted to Commander of Area 3 Detectives Division by Defendant Martin and held this assignment until 1991 when he was suspended and, ultimately fired by the Chicago Police Department for the torture and abuse of Andrew Wilson.

**ANSWER:**    Defendant admits that Plaintiff has sued him in his individual

capacity.  With respect to the remaining averments in this Paragraph of Plaintiff's First

Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**5.      Defendants Leonard Bajenski, David Dioguardi, Robert Flood, Raymond Madigan, John McCabe, Dennis McGuire, Raymond McNally and Daniel McWeeny (referred to herein collectively, including Defendant Burge, as "the Defendant Officers") were duly appointed and sworn Chicago Police officers who were assigned to the Detective Division at Area 2 Violent Crimes Unit under Defendant Burge's command, and who engaged in the conduct complained of in the course and scope of their employment. The Defendant Officers are sued in their individual capacities.**

**ANSWER:**      Defendant admits that Plaintiff has sued Leonard Bajenski, David Dioguardi, Robert Flood, Raymond Madigan, John McCabe, Dennis McGuire, Raymond McNally and Daniel McWeeny in their individual capacities.  With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**6.      From 1987 to 1992, Defendant Leroy Martin was the Superintendent of Police for the City of Chicago, and as such was responsible for the policies, practices, and customs complained of herein. In 1983, he was Commander of the Area 2 Detective Division and was thereby Defendant Burge's direct supervisor. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.**

**ANSWER:**      Defendant admits that Leroy Martin was the former Superintendent of Police for the City of Chicago.  Defendant admits that Plaintiff has sued Leroy Martin in his individual capacity.  With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the

threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him

by the Fifth Amendment of the United States Constitution, and therefore declines to

answer at this time.

**7.      From 1998 to 2004, Defendant Terry Hillard was the Superintendent of Police for the City of Chicago, and as such was responsible for the policies, practices, and customs complained of herein.   He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.**

**ANSWER:**    Defendant admits that Terry Hillard was the former Superintendent

of Police for the City of Chicago.  Defendant admits that Plaintiff has sued Terry Hillard

in his individual capacity.  The remaining averments in this Paragraph of Plaintiff's First

Amended Complaint purport to set forth conclusions of law to which no response is

required.

**8.      From 1998 to 2002, Defendant Thomas Needham was counsel to, and administrative assistant for, Superintendent Terry Hillard, who was his direct supervisor.  He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.**

**ANSWER:**    Defendant is without knowledge or information sufficient to form

a belief as to the truth or falsity of the averments in this Paragraph of Plaintiff's First

Amended Complaint.

**9.      From 1990 to 1998, Defendant Gayle Shines was the Director of the Office of Professional Standards of the Chicago Police Department.  Her direct supervisor was the Chicago Police Superintendent.  She engaged in the conduct complained of the course and scope of her employment and is sued in her individual capacity.**

**ANSWER:**    Defendant is without knowledge or information sufficient to form

a belief as to the truth or falsity of the averments in this Paragraph of Plaintiff's First

Amended Complaint.

4

10.     Defendant City of Chicago is an Illinois municipal corporation, as such is responsible for the policies, practices and customs of the Chicago Police Department, its Office of Professional Standards, its Personnel Division, its Detective Division, and its Superintendent of Police, as well as those of the Mayor and his office, the Corporation Counsel and her Office, and the Chicago Police Board, and is and/or was the employer of each of the Defendant Officers and Police officials. The City of Chicago is responsible for the acts of Defendant Officers and police officers while employed by the City of Chicago and while acting within the scope of their employment.

**ANSWER:**     Defendant admits that the City of Chicago is a municipal entity.

With respect to the remaining averments in this Paragraph of Plaintiff's First Amended

Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal

prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of

the United States Constitution, and therefore declines to answer at this time.

11.     Defendant Dennis Dernbach was an Assistant Cook County State's Attorney, (hereinafter referred to as ASA), a supervisor in the Felony Review Unity, and was assigned to Area 2 in January of 1984. Felony Review was an investigative arm of the State's Attorneys' Office, and as such, the ASAs assigned to this Unit worked with Chicago Police detectives, *inter alia*, in interrogating suspects and taking statements from them. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

**ANSWER:**     Defendant admits that Dennis Dernbach is sued in his individual

capacity. Defendant is without knowledge or information sufficient to form a belief as to

the truth or falsity of the remaining averments in this Paragraph of Plaintiff's First

Amended Complaint.

12.     Defendant Richard Devine has been the State's Attorney of Cook County from 1997 to the present, and as such is responsible for the policies, practices and customs of the State's Attorneys' Office. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

**ANSWER:**     Defendant admits that Richard Devine is the State's Attorney of

Cook County and is sued in his individual capacity. Defendant is without knowledge or

5

information sufficient to form a belief as to the truth or falsity of the remaining averments in this Paragraph of Plaintiff's First Amended Complaint.

**13.     Defendant John Doe was an Assistant Cook County State's Attorney assigned to the Felony Review Unit. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.**

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this Paragraph of Plaintiff's First Amended Complaint.

**14.     Defendant Cook County is a governmental entity within the State of Illinois, which consists in part of its Cook County State's Attorney's Office (hereinafter referred to as SAO). At all times relevant to this action, Cook County and the Cook County State's Attorney's Office were the employers of Defendants Devine, Dernbach and Doe, and are necessary parties to this lawsuit.**

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this Paragraph of Plaintiff's First Amended Complaint.

**15.     At all times relevant to this action, each of the named defendants acted in the scope of employment, and under the color of the laws, regulations, and customs of the State of Illinois. Each defendant's actions constituted "state action" as defined under federal law.**

**ANSWER:**     Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**III.     FACTUAL ALLEGATIONS**

**16.     On January 11, 1984, Renee Coleman, Tony Coleman, Michelle Jointer and Ricardo Pedro were murdered in Renee Coleman's apartment.**

6

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**17.    The Officer Defendants, together with other Area 2 detectives and personnel, were assigned to investigate the murders.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**18.    On January 12, 1984, Plaintiff was arrested by Defendants Robert Flood, Raymond Madigan, Dennis McGuire and Daniel McWeeny, after detectives were told that the had been in Renee Coleman's apartment the previous night, and was transported to the Area 2 police station at around 3:20 p.m.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**19.    In the police car on the way to Area 2, Plaintiff asked the Defendant Officers for an attorney. In response, he was hit in the face by one of the arresting Defendants.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**20.    Once at Area 2, Plaintiff was placed in an interrogation room, where his hands were cuffed behind his back and attached to a metal ring on the wall. He**

7

was interrogated by the Defendant Officers for an extended period of time, and he denied his involvement in the murders.

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

21. **When Plaintiff continued to maintain his innocence, the Defendant Officers then used a "black box" to administer electric shock to him by placing electrodes on his arms and on and in his rectum.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

22. **During the extended interrogation of Plaintiff, the Defendant Officers continued the torture by repeatedly placing an airtight bag over Plaintiff's head, suffocating him, and by squeezing his testicles.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

23. **During the same time period, the Defendant Officers were also torturing Plaintiff's co-defendant, Leonard Kidd, with electric shock from the black box and with suffocation while they interrogated him in another Area 2 interview room.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

8

24.     During the time period that the Defendant Officers were interrogating and torturing Plaintiff and co-defendant Kidd, Defendant Burge summoned Defendant Dernbach to Area 2.

**ANSWER:**     Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

25.     As a result of his prior experience as a Felony Review supervisor and Assistant States Attorney, Defendant Dernbach had previously learned of numerous allegations of electric shock, baggings, and related forms of torture which had previously been made against Burge and other Area 2 officers, including several of the Defendants.

**ANSWER:**     Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

26.     Defendants Dernbach and ASA Doe participated in the continuing interrogations of the Plaintiff and Leonard Kidd. Throughout the course of their torture, which continued while Dernbach and Doe were present at Area 2, Plaintiff screamed out in pain. During the time period in which the Officer Defendants continued the torture of Plaintiff and Kidd, Dernbach and Doe were present at Area 2 and repeatedly went in and out of the rooms in which Plaintiff and Kidd were being interrogated.

**ANSWER:**     Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

27.     As a consequence of their prior knowledge, what they observed and heard while at Area 2, and their conversations with Plaintiff and Leonard Kidd, Defendants Dernbach and Doe were on notice that Plaintiff and Kidd were being

tortured by the Defendant Officers during their interrogations, they did nothing to stop the continuing torture and abuse.

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

28. **Plaintiff's interrogation continued for twelve hours until Plaintiff, fearing that the torture would continue until he gave a statement, and as a direct result of the torture and physical abuse inflicted upon him by the Defendant Officers, submitted to the Defendant Officers' demands and agreed to make a false statement implicating himself in the murders.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

29. **Plaintiff's tortured "confession" was based on information supplied to Dernbach by Defendant Burge, by the other Defendants Officers, and by Leonard Kidd, who supplied false information which was a product of his torture.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

30. **The Defendant Officers, through their torture, physical abuse, and coercion, and Defendants Dernbach and Doe, through their questioning and failure to stop the continuing torture and abuse, thereby constructed false oral admissions, and a false written statement which they attributed to the Plaintiff.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment of the United States Constitution, and therefore declines to answer at this time.

**31.    In Court the next day, and to numerous other persons thereafter, Plaintiff stated that he had been tortured into giving a false confession.**

**ANSWER:**    Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**32.    On September 27, 1984, the Superintendent of the Chicago Police Department officially commended the Defendant Officers for the "skillful interrogation techniques" in questioning Plaintiff.**

**ANSWER:**    Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**33.    The torture techniques used on Plaintiff were strikingly similar to those used against numerous other suspects at Area 2, and later at Area 3, by Defendant Burge, the other Defendant Officers, and other Area 2 and Area 3 detectives and supervisors from 1973 to 1991.**

**ANSWER:**    Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**34.    The Defendant Officers, together with Defendants Doe and Dernbach, included the constructed and manufactured false admissions, attributable to Plaintiff, which they knew were false and/or totally unreliable, and coerced, in official reports and presented these false admissions to prosecuting attorneys who relied upon and presented this false evidence throughout Plaintiff's case.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

35. **Defendants Bajenski, Dioguardi, Flood, Madigan, McCabe, McGuire, McNally, McWeeny, and Dernbach also presented this fabricated, coerced and totally unreliable evidence at Plaintiff's trial through false and perjured testimony.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

36. **The Defendants Officers, together with Defendants Dernbach and Doe, also suppressed from the prosecutors who prosecuted Plaintiff, from the judge and jury who heard his case, and from the prosecutors and judges who prosecuted and heard Plaintiff's appeals and post conviction petitions, that the admissions they attributed to Plaintiff were false and/or totally unreliable, coerced through torture, and fabricated, and were a product of a pattern and practice of torture and abuse at Area 2, as well as the physical implements of this pattern and practice, which were used to torture Plaintiff, Leonard Kidd, and numerous other victims, including the black box and other shocking devices, plastic bags and typewriter covers, and various handguns and other weapons.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

37. **While Plaintiff was awaiting trial, the Office of Professional Standards of the Chicago Police Department (OPS) purported to open an "investigation" into Plaintiff's allegations of torture. However this "investigation" was a complete sham and cover-up, and the Defendant Officers and ASAs withheld their torture of Plaintiff and Leonard Kidd, and their fabrication and coercion of evidence from the OPS, which did not even bother to question said Defendants, and the OPS found the allegations to be "not sustained."**

**ANSWER:**   Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averment concerning the purported actions of OPS. With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**38.    At Plaintiff's trial, his coerced and fabricated "confession" was presented by the prosecution and provided the basis for his conviction.**

**ANSWER:**   Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**39.    On the basis of his coerced, fabricated and totally unreliable statement, Plaintiff was wrongfully convicted by the jury of four counts of murder, four counts of concealment of homicidal death, and one count of aggravated arson, and was sentenced to death.   Absent the Defendants' coercion, torture and fabrication, Plaintiff would neither have been prosecuted nor convicted of crime he did not commit.**

**ANSWER:**   Defendant admits that a jury of Plaintiff's peers convicted Plaintiff of four counts of murder, four counts of concealment of homicidal death, one count of aggravated arson, and sentenced him to death. With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**40.    After Plaintiff was convicted, the Office of Professional Standards completed an investigation into allegations of torture of suspects at Area 2. In a secret report which was approved by the Director of the OPS and forwarded to Defendant Superintendent Leroy Martin, the OPS found that from 1973 to 1985 there was a practice of systematic abuse of suspects held in custody at Area 2 and that certain Area 2 command personnel were aware of such abuse and condoned it. The OPS further found that this practice included psychological techniques and planned torture, and that Area 2 command personnel were aware of the systematic abuse and encouraged it either by actively participating in it or by failing to take any action to stop it.**

**ANSWER:**    Defendant is without knowledge or information sufficient to form

a belief as to the truth or falsity of Plaintiff's averment concerning the  purported actions

of OPS.  With respect to the remaining averments in this Paragraph of Plaintiff's First

Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential

criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment of the United States Constitution, and therefore declines to answer at this

time.

**41.    Plaintiff was extensively interviewed by the OPS investigator who wrote the section of the Report which found systemic torture, which is now commonly known as the Goldston Report, and Plaintiff's torture, as well as that of his co-defendant, Leonard Kidd, were listed as part of the systemic torture at Area 2 in the findings of the Report.**

**ANSWER:**    Defendant is without knowledge or information sufficient to form

a belief as to the truth or falsity of Plaintiff's averment concerning the  purported actions

of OPS.  With respect to the remaining averments in this Paragraph of Plaintiff's First

Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential

criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment of the United States Constitution, and therefore declines to answer at this

time.

**42.     In another section of this Report, the OPS also found that Burge and two other Area 2 detectives tortured Andrew Wilson and recommended that Burge be fired.**

**ANSWER:**     Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**43.     Defendant Superintendent Martin and other command personnel delayed, obstructed, and otherwise undermined the OPS investigation, report, findings and conclusions set forth above, *inter alia*, by suppressing the findings that Wilson was tortured and by refusing to suspend, transfer or remove Burge either before, or for nearly a year after, the findings of the OPS were first made known to them in November of 1990.**

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averment concerning the purported actions of OPS or Defendant Martin.  With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**44.     Defendant Martin and other command personnel further delayed, obstructed, and otherwise undermined the OPS investigation, report, findings and conclusions set forth above, *inter alia*, by suppressing the findings that there was systematic abuse at Area 2 which implicated Defendants Martin, Burge, the Officer Defendants, and other Area 2 detectives until this report and findings were ordered produced by Federal Court order in February of 1992. This suppression prevented Plaintiff from obtaining highly exculpatory evidence for use in his post-trial proceedings.**

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averment concerning the purported actions

of OPS or Defendant Martin. With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**45.    Additionally, Defendant Martin, Defendant OPS Director Shines, and other command personnel, in violation of police regulations, refused to investigate numerous other allegations of police torture which were brought to their attention, including allegations of electric shock made by torture victim Melvin Jones against Defendants Burge, McGuire, Flood, and McWeeny, or to investigate Plaintiff's allegations of torture against these same Officers, despite the findings made in the Goldston Report, and other specific recommendations to do so.**

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averment concerning the purported actions of Defendant Martin and Defendant Shines. With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**46.    In September of 1988, Defendant Devine, together with law partner William Kunkle, and their law firm, were retained by the Defendant City of Chicago to represent Defendant Jon Burge and several Area 2 detectives, including John Yucaitis and Patrick O'Hara, in the civil rights lawsuit brought against them and the City of Chicago by Area 2 torture victim Andrew Wilson.**

**ANSWER:**    Defendant admits that State's Attorney Richard Devine was in private practice at one time. Defendant also admits that Andrew Wilson filed a lawsuit against him alleging police abuse. With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel

16

due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**47.    For the next eight years, Defendant Devine, Mr. Kunkle, and their law firm continued to represent Defendant Burge, John Yucaitis, Patrick O'Hara and the other Area 2 defendants in the Wilson civil cases, as well as in the Police Board Proceedings against Burge, Yucaitis and O'Hara, wherein they were retained by the Fraternal Order of Police (FOP). Additionally, Defendant Devine, Mr. Kunkle and their law firm were retained by the Defendant City of Chicago to represent Defendant Burge in another civil rights torture case where a pattern and practice of torture was alleged. As a result of this representation, Defendant Devine, Mr. Kunkle and their law firm received over one million dollars in attorney's fees from the City of Chicago and the FOP.**

**ANSWER:**    Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**48.    From 1988 to 1996, Defendant Devine, Mr. Kunkle, and their law firm were informed of a wealth of compelling evidence that their clients, including Burge, were centrally involved in a pattern and practice of torturing suspects, including Plaintiff, at Area 2, and Devine, Kunkle, and their co-counsel, together with Defendant Burge, and Area 2 detectives Yucaitis and O'Hara, made numerous litigation decisions designed to protect Burge, Yucaitis, and O'Hara from criminal, civil and administrative liability in the face of that evidence.**

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averment concerning any purported "evidence" that State's Attorney Richard Devine allegedly received. With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

17

49.     In 1997, Defendant Devine became the State's Attorney of Cook County. Acting with a clear conflict of interest and acting under the color of his authority of State's Attorney, Defendant Devine has continued, from 1997 to the present, to protect the interests of his Area 2 clients, particularly Defendant Burge, and to cover up their central role in the pattern and practice of torture, *inter alia*, by:

> a.     making false public statements in which he discredited evidence of torture against his clients and other Are 2 Defendants including evidence presented by Plaintiff and other Area 2 victims, whereby they sought new suppression hearings, new trial, new sentences, pardons and/or clemency on the basis that false confessions were tortured from them;
>
> b.     making false statements to public officials in which he discredited the evidence of torture against his clients and other Area 2 Defendants;
>
> c.     refusing to investigate the allegations that his clients and other Area 2 and Area 3 detectives were central actors in a pattern and practice of torture and abuse which included the torture of Plaintiff, and obstructing all attempts to so investigate;
>
> d.     suppressing evidence which further established that his clients, and other Area 2 and Area 3 detectives were central actors in the pattern and practice of torture which included Plaintiff's torture; and
>
> e.     otherwise using his influence and decision-making power as State's Attorney of Cook County to continue the wrongful conviction and imprisonment of Plaintiff.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averments concerning State's Attorney Richard Devine. With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

50.     From 1993 until 1998 when she left office, Defendant OPS Director Gayle Shines suppressed findings of OPS investigators that Defendant Dioguardi, Sergeant John Byrne, and several other Area 2 detectives, under the command of Defendant Burge, tortured abused six suspects, including death row inmate Stanley Howard, as well as the evidence which supported these findings.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averment concerning the purported actions of Defendant Gayle Shines. With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**51.** In 1998, Defendants Hillard and Needham, with full knowledge that Defendant Burge, the other Defendant Officers, and other Area 2 and Area 3 detectives participated in a pattern and practice of torture and abuse of suspects, including Plaintiff, violated police regulations and obstructed justice by overturning the OPS findings set forth in paragraph 50 above, by refusing to investigate OPS Director Gayle Shines' suppression of evidence, and by suppressing these OPS files and findings from Plaintiff and other criminal defendants.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's averment concerning the purported actions of Defendants Hillard and Needham. With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**52.** The actions of the Defendants set forth above resulted in the further continuation of Plaintiff's wrongful conviction and false imprisonment until January 10, 2003, when Illinois Governor George Ryan granted Plaintiff a pardon on basis of innocence. In granting Plaintiff and three other Burge death row torture victims, Madison Hobley, Aaron Patterson, and Stanley Howard, innocence pardons, the Governor found that:

> The category of horrors was hard to believe. If I hadn't reviewed the cases myself, I wouldn't believe it. We have evidence from four men, who did not know each other, all getting beaten and tortured and

> convicted on the basis of the confessions they allegedly provided.
> They are perfect examples of what is so terribly broken about our
> system.

**ANSWER:** Defendant admits that former Governor George Ryan pardoned

Plaintiff and others of some of their crimes purportedly on the basis of innocence. With

respect to the remaining averments in this Paragraph of Plaintiff's First Amended

Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal

prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of

the United States Constitution, and therefore declines to answer at this time.

**53.** **In response to Plaintiff's innocence pardon, Defendant Devine, again
acting on behalf of his Area 2 clients, including Defendant Burge, and under the
color of his office, publicly defamed Plaintiff and the three other torture victims
whom Governor Ryan also pardoned on the basis of innocence by stating: "I think
these people are evil. Should these people be among us? I don't think so." He
referred to them as "convicted murderers" while condemning the pardons as
"outrageous" and unconscionable," and threatened to challenge them in Court.**

**ANSWER:** Plaintiff's averment that State's Attorney Richard Devine

"defamed" Plaintiff while acting "under the color of his office" constitutes a conclusion

of law to which no response is required. Defendant admits that State's Attorney Devine

made statements concerning former Governor George Ryan's pardons of certain

individuals. Defendant denies that State's Attorney Devine was acting as Defendant's

attorney and on his behalf when State's Attorney Devine made statements concerning

former Governor Ryan's pardons of certain individuals. Defendant is without knowledge

or information sufficient to form a belief as to the truth or falsity of the remaining

averments in this Paragraph of Plaintiff's First Amended Complaint.

**54.** **Plaintiff spent nineteen horrible years in prison for a crime he did not
commit, most of which were spent on Death Row in maximum security prisons in
the State of Illinois. Nearly twenty years of Plaintiff's adult life have been
wrongfully taken from him due to the actions of the Defendants in this case.**

**ANSWER:**    Defendant admits that Plaintiff was incarcerated on death row. With respect to the remaining averments in this Paragraph of Plaintiff's First Amended Complaint, Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**55.    The time Plaintiff spent in prison were emotionally, physically, and psychologically grueling. He spent most of his adult life alone in a tiny cell on Death Row under the most oppressive and stringent conditions.**

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this Paragraph of Plaintiff's First Amended Complaint.

**56.    In the nineteen lost years spent in prison, Plaintiff suffered from constant fear and anxiety, deep depression, despair, rage, boredom, and loneliness. Plaintiff suffered from the loss of sustained contact with his children. He continues to live under the effect of his isolation, incarceration, and depression.**

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this Paragraph of Plaintiff's First Amended Complaint.

**57.    All the while suffering from the indignity, humiliation, shame, embarrassment, disgrace and discomfort of prison, Plaintiff further suffered the specter of an imminent death sentence for crimes he did not commit. The emotional and psychological scars from this injustice alone are enormous.**

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the averments in this Paragraph of Plaintiff's First Amended Complaint.

**58.    Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Doe, Dernbach, Martin, Devine, Shines, Hillard, and Needham, acting jointly and with other police and prosecutorial**

21

investigative, supervisory and command personnel, together and under color of law, reached an understanding, engaged in a course of conduct, engaged in a joint action and otherwise conspired among and between themselves to deprive Plaintiff of his constitutional rights, and did deprive Plaintiff of said rights, including his rights to be free from unreasonable arrest and seizure, from wrongful confinement and imprisonment, from involuntary incrimination, and from interrogation techniques which "shock the conscience" and his rights to access to the Courts and to a fair and impartial trial, as protected by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Because said actions were done with the knowledge and purpose of depriving Plaintiff, who is African-American, of the equal protection of the laws and/or equal privileges and immunities under the law, and with racial animus toward the Plaintiff, they also deprived Plaintiff of his right to equal protection of the laws under the Fourteenth Amendment, and U.S.C. §§ 1983 and 1985.

ANSWER: Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

59. In furtherance of this conspiracy or conspiracies, Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Doe, Dernbach, Martin, Devine, Shines, Hillard, and Needham, together with their co-conspirators, each committed one or more of overt acts set forth above, including, but not limited to, the wrongful arrest, imprisonment, charging and prosecution of Plaintiff and other torture victims; the fabrication and coercion of false and totally unreliable inculpatory evidence against Plaintiff and other torture victims; the coercion and manufacture of false and totally unreliable evidence from Plaintiff's co-defendant; the failure to stop the coercive interrogations of Plaintiff and his co-defendant, despite having knowledge that they were being tortured and abused; the unconstitutional torture and coercion of Plaintiff and other torture victims in order to compel them to make false inculpatory statements, against themselves and/or others; the repeated deception of prosecuting attorneys and judges, by, *inter alia*, making knowing misstatements and presentation of this knowingly false and incomplete evidence to prosecutors and judges; the making of false and defamatory public statements concerning Plaintiff and other torture victims; the giving of false testimony and the filing of false and incomplete statements and reports; the suppression of favorable, exculpatory evidence; the failure to come forward with a truthful account of the events; the refusal to investigate and the subversion and quashing of good faith investigations and findings; the abuse of public office and the exploitation of a blatant conflict of interest to cover-up the acts of torture and abuse; and the other acts set forth above.

22

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

60. **Said conspiracy or conspiracies, joint actions and overt acts continue to this date have caused and continue to cause Plaintiff's constitutional rights to be violated and the injuries, pain, suffering, fear, mental anguish, detention, imprisonment, humiliation, defamation of character and reputation, and loss of freedom and companionship, as set forth more fully above and below.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

## COUNT I
### (42 U.S.C. 1983 Claim for Deprivation of Right to Fair Trial and for Wrongful Conviction)

61. **Plaintiff re-alleges paragraphs 1 through 60.**

**ANSWER:** Defendant incorporates as if fully stated herein his responses to Paragraphs 1 through 60 of Plaintiff's First Amended Complaint.

62. **Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, and Doe, individually, jointly, and in conspiracy, caused the wrongful charging, prosecution, and conviction of Plaintiff, and these same Defendants, together with Defendants, Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, caused the continuation of said wrongful conviction, by coercing, constructing and/or fabricating the false and totally unreliable statements which formed the basis for Plaintiff's charging, prosecution and conviction, by withholding from the prosecutors, judges and defense attorneys involved in Plaintiff's prosecution the fact that these admissions were false and/or totally unreliable, fabricated, and coerced, by suppressing additional exculpatory torture findings and evidence, as well as other exculpatory evidence, by giving a false and incomplete version of events to prosecutors, by writing false reports and giving false testimony, by improperly influencing the judges hearing Plaintiff's case, *inter alia*, making false public**

23

statement, by obstructing investigations which would have led to discovery of further exculpatory evidence, and by the additional wrongdoing set forth above, thereby unconstitutionally depriving Plaintiff or his liberty and violating his right to a fair and impartial trial and not to be wrongfully convicted, as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

63.    The action of Defendants Burge, McGuire Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, Doe, Martin, Devine, Shines, Hillard, and Needham, in depriving Plaintiff of his right to a fair trial and not to be wrongfully convicted were the direct and proximate cause of the injuries to Plaintiff which are set forth above.

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

## COUNT II
### (42 U.S.C. § 1983 Claim for False Arrest and Imprisonment)

64.    **Plaintiff re-alleges paragraphs 1 through 63.**

**ANSWER:** Defendant incorporates as if fully stated herein his responses to Paragraphs 1 through 63 of Plaintiff's First Amended Complaint.

65.    **The actions of Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, and Doe, individually, jointly, and in conspiracy, in falsely arresting and imprisoning Plaintiff, and these same Defendants, together with Defendants Martin, Devine, Shines, Hillard, and Needham, individually, jointly and in conspiracy in continuing said imprisonment for nineteen years, without probable cause, violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable seizures.**

24

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**66. The actions of the Defendants in falsely imprisoning Plaintiff, continuing said false imprisonment, and covering up their own misconduct were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

## COUNT III
### (42 U.S.C. § 1983 Claim for Torture and Physical Abuse)

**67. Plaintiff re-alleges paragraphs 1 through 66.**

**ANSWER:** Defendant incorporates as if fully stated herein his responses to Paragraphs 1 through 66 of Plaintiff's First Amended Complaint.

**68. The actions of Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Flood, and McCabe in torturing and physically abusing Plaintiff and threatening him with additional torture and physical abuse, individually, jointly, and in conspiracy violated his Fourth and Fourteenth Amendment rights to be free from unreasonable seizures.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**69. Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach and Doe were aware of the torture**

and physical abuse of the Plaintiff, and participated in it by allowing the torture and abuse to continue while having the obligation and duty to stop it, and by failing to report the abuse to superiors in the Police Department and the State's Attorney's Office.

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

70. **The actions of the Defendants, individually, jointly and in conspiracy, in torturing and physically abusing the Plaintiff, threatening to inflict further torture and physical abuse, and/or failing to stop the torture and abuse while having the opportunity and duty to do so, were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**COUNT IV**
**(42 U.S.C. § 1983 Claim for Coercive Interrogation)**

71. **Plaintiff re-alleges paragraphs 1 through 70.**

**ANSWER:** Defendant incorporates as if fully stated herein his responses to Paragraphs 1 through 70 of Plaintiff's First Amended Complaint.

72. **The actions of Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach and Doe, individually, jointly, and in conspiracy, in coercively interrogating Plaintiff, and the actions of Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, and McCabe, in using torture techniques which "shock the conscience" during said interrogations, resulted in false, coerced, and fabricated admissions, and violated Plaintiff's Fifth and Fourteenth Amendment rights to be free from compulsory self-incrimination and deprivation of liberty without due process of law.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

**73.** **The actions of the Defendants in using torture and other coercive techniques to interrogate Plaintiff, and/or condoning and permitting the use of said techniques, were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

### COUNT V
**(42 U.S.C. § 1983 Due Process Claim for Deprivation of Access to Courts)**

**74.** **Plaintiff re-alleges paragraphs 1 through 73.**

**ANSWER:** On March 30, 2005, the Court dismissed this Count. Accordingly, no response is required.

**75.** **Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Doe and Dernbach, individually, jointly, and in conspiracy, by their wrongful charging, prosecution, conviction, and imprisonment, and these same Defendants, together with Defendants Martin, Devine, Shines, Hillard, and Needham, by the resultant obstruction of justice and suppression of evidence, violated Plaintiff's right to access to the courts, *inter alia*, by suppressing evidence favorable to the claims asserted herein, and by causing Plaintiff to potentially forfeit several of his claims, to delay pursing his other claims for many years, and to proceed without key evidence which remains suppressed or has been destroyed, lost, or otherwise diminished do to the lapse in time, in violation of his Fifth and Fourteenth Amendment rights to due process of law and access to the courts**
**ANSWER:** On March 30, 2005, the Court dismissed this Count. Accordingly, no response is required.

COUNT VI
(42 U.S.C. § 1983 *Monell* Policy Claim Against City of Chicago)

76.    **Plaintiff re-alleges paragraphs 1 through 75.**

**ANSWER:**    Defendant incorporates as if fully stated herein his responses to

Paragraphs 1 through 75 of Plaintiff's First Amended Complaint.

77.    **The actions of Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, Doe, Martin, Devine, Shines, Hillard, and Needham, as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Defendant City of Chicago, its Police Department, its Office of Professional Standards (OPS) and Internal Affairs Division (IAD), its Personnel Division, *and/or* its Superintendents, as well as its Police Board, the Mayor and his Office, and the Corporation Counsel and her Office.**

**ANSWER:**    Defendant makes no response to this Paragraph because Count VI

of Plaintiff's First Amended Complaint is not directed against him.

78.    **At all times material to this complaint, Defendant City and its Police Department, Superintendents, OPS, IAD, Personnel Division, and/or Detective Division, as well as the Mayor and his Office, the Corporation Counsel and her Office, and/or Police Board had interrelated *de facto* policies, practices, and customs which included, *inter alia*:**

> **a)    conducting physically, psychologically or otherwise illegally or improperly coercive interrogations of witnesses, suspects and arrestees in order to obtain confessions and wrongful convictions, including, but not limited to, the use of torture techniques under the command and supervision of Defendant Burge at Area 2, and later at Area 3;**

> **b)    the filing of false reports, and giving false statements and testimony about said interrogations and confessions and fabricating parts or all of said confessions, suppressing evidence concerning said interrogations and confessions, pursuing and obtaining wrongful prosecutions and false imprisonments on the basis of confessions obtained during said interrogations, and otherwise covering up the true nature of said interrogations and confessions in circumstances which included, but were not limited to, the use of torture techniques by Area 2 and Area 3 detectives under the command and supervision, and with the active participation of, Defendant Burge;**

c)      the failure to videotape the interrogation or questioning of suspects, arrestees, and witnesses, including, but not limited to, in the circumstances set forth in a-b above;

d)      the failure to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers, particularly those who are repeatedly accused of torture and related abuse of suspects; of false arrests, wrongful imprisonments, malicious prosecutions and wrongful convictions; of making false reports and statements; and/or physically, psychologically or otherwise illegally or improperly coercive questioning or interrogation of witnesses, suspects and arrestees including but not limited to, persons who were tortured and or physically and/or psychologically abused during questioning.  This failure to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control includes, but is not limited to "repeater" Defendants Burge, McGuire, Flood, McNally, McCabe, Dioguardi, Madigan, McWeeny, and all other Area 2 and 3 detectives who were repeatedly accused of torturing and physically abusing suspects at Area 2 and Area 3;

e)      the police code of silence, specifically in cases were officers engaged in the violations articulated in paragraphs a-d above, particularly police torture and other unconstitutional and coercive interrogations at Area 2 and Area 3 under the command and supervision of Defendant Burge, whereby police officers refused to report or otherwise cover-up instances of police misconduct, and/or the fabrication, suppression and destruction of evidence of which they were aware, despite their obligation under the law and police regulations to do so.  Said code of silence also include police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and perjuring themselves in criminal cases where they and their fellow officers have tortured or otherwise coercively or otherwise unconstitutionally interrogated a suspect, arrestee or witness, or falsely arrested, imprisoned and prosecuted a criminal defendant, and includes, but is not limited to, cases, where torture techniques under the command and supervision of Defendant Burge at Area 2, and later at Area 3, have been employed; and

f)      covering up and suppressing evidence and findings, refusing to properly investigate, arrest and charge, continuing to finance Defendant Burge's defense and otherwise attempting to both publicly and legally defend his actions long after acknowledging that he had committed repeated acts of torture, and otherwise obstructing justice in police torture cases, particularly those that arose at Area 2 and

Area 3 under the supervision, and with the participation of, Defendant Burge.

**ANSWER:** Defendant makes no response to this Paragraph because Count VI

of Plaintiff's First Amended Complaint is not directed against him.

79. **The pattern and practice or torture and abuse at Area 2, the cover-up of said abuse and wrongful prosecutions and convictions which resulted therefrom, were well known within Area 2 both well before and after Plaintiff was tortured and wrongfully convicted, including by the Commanders of Area 2, which included Defendant Leroy Martin, as well as to the successive Police Superintendents, including Defendants Martin and Hillard, and to the successive Directors of OPS, including Defendant Shines, the Chiefs of Detectives, including Defendant Hillard, and to other policy making, command, and supervisory City and police personnel, who participated in the cover-up and suppression of evidence and the wrongful prosecution and conviction of the Plaintiff and other torture victims, *inter alia*, in the manner set forth in this complaint.**

**ANSWER:** Defendant makes no response to this Paragraph because Count VI

of Plaintiff's First Amended Complaint is not directed against him.

80. **Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, encouraged, *inter alia*, the coercing of statements from suspects, witnesses and arrestees, by torture and related abusive tactics and techniques, the fabrication of confessions and other evidence, the suppression of evidence of torture and other exculpatory evidence, the intimidation of witnesses, the making of false statements and reports, the giving of false testimony, and the pursuit and continuation of wrongful convictions and false arrests and imprisonments, and were, separately and together, a direct and proximate cause of the unconstitutional acts and perjury committed by the named Defendants and their co-conspirators, and the injuries suffered by the Plaintiff.**

**ANSWER:** Defendant makes no response to this Paragraph because Count VI

of Plaintiff's First Amended Complaint is not directed against him.

81. **Additionally, said failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Doe, Dernbach, Martin, Devine, Shines, Hillard and Needham, was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Plaintiff.**

**ANSWER:** Defendant makes no response to this Paragraph because Count VI

of Plaintiff's First Amended Complaint is not directed against him.

**82.** **Additionally, and/or alternatively, the involvement in, and ratification of, the unconstitutional actions set forth above by Chicago police policymakers, including, but not limited to, Defendants Leroy Martin and Terry Hillard, and their direct subordinates, including, but not limited to, Defendants Shines and Needham, establish that said constitutional violations were directly and proximately caused by the City of Chicago and its Police Department.**

**ANSWER:** Defendant makes no response to this Paragraph because Count VI

of Plaintiff's First Amended Complaint is not directed against him.

### COUNT VII
**(State Law Claim for False Imprisonment)**

**83.** **Plaintiff re-alleges paragraphs 1 through 82.**

**ANSWER:** Defendant incorporates as if fully stated herein his responses to

Paragraphs 1 through 82 of Plaintiff's First Amended Complaint.

**84.** **The imprisonment of Plaintiff, without probable cause, individually, jointly, and in conspiracy by Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach and Doe, its continuation by these Defendants, together with Defendants Martin, Devine, Shines, Hillard and Needham, individually, jointly, and in conspiracy constituted the tort of false imprisonment under Illinois law.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential

criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment of the United States Constitution, and therefore declines to answer at this

time.

**85.** **Defendants' actions in imprisoning Plaintiff were willful and wanton.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential

criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth

Amendment of the United States Constitution, and therefore declines to answer at this time.

## COUNT VIII
### (State Law Claim for Malicious Prosecution)

**86.    Plaintiff re-alleges paragraphs 1 through 85.**

**ANSWER:**    Defendant incorporates as if fully stated herein his responses to Paragraphs 1 through 85 of Plaintiff's First Amended Complaint.

**87.    Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, and Doe, individually, jointly, and in conspiracy, initiated a malicious prosecution without probable cause against Plaintiff, and these same Defendants, together with Defendants Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, continued said prosecution, again without probable cause. Said prosecution was ultimately terminated in Plaintiff's favor. The Defendants' actions were done in a willful and wanton manner, and directly and proximately caused the injury and damage to Plaintiff set forth above.**

**ANSWER:**    Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

## COUNT IX
### (State Law Claim for Intentional Infliction of Emotional Distress)

**88.    Plaintiff re-alleges paragraphs 1 through 87.**

**ANSWER:**    Defendant incorporates as if fully stated herein his responses to Paragraphs 1 through 87 of Plaintiff's First Amended Complaint.

**89.    Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, and Doe, individually, jointly, and in conspiracy, by, *inter alia*, torturing a false confession from Plaintiff and/or by failing to stop said torture, by constructing and fabricating the details of said confession, and by procuring his prosecution, conviction, and death sentence for multiple murders he did not commit by means of said false confession, engaged in**

32

extreme and outrageous conduct. **Additionally these same Defendants, together with Defendants Devine, Hillard, Shines, Martin and Needham, individually, jointly and in conspiracy, by fabricating, coercing and suppressing other evidence, by continuing Plaintiff's false imprisonment on death row procuring his wrongful conviction, by making false and defamatory statements, by refusing to investigate, and by otherwise abusing and defaming Plaintiff engaged in additional extreme and outrageous conduct.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

90. **Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, Doe, Martin, Devine, Shines, Hillard, and Needham, intended, by subjecting Plaintiff, and knew that their conduct would cause Plaintiff and his family severe emotional distress.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

91. **As a direct and proximate result of Defendants' outrageous conduct, Plaintiff was injured, and has experienced, and continues to experience, severe emotional distress, including fear of execution, nightmares, sleep disruption, symptoms of post traumatic stress disorder, anxiety, depression, and inability to focus or concentrate.**

**ANSWER:** Defendant, on the advice of counsel due to the threat of a potential criminal prosecution, reluctantly asserts the rights guaranteed to him by the Fifth Amendment of the United States Constitution, and therefore declines to answer at this time.

## COUNT X

### (State Claim for Conspiracy)

33

92.    Plaintiff re-alleges paragraphs 1 through 91.

**ANSWER:**    On March 30, 2005, the Court dismissed this Count. Accordingly,

no response is required.

93.    **Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Doe, Dernbach, Martin, Devine, Shines, Hillard, and Needham, with other unsued co-conspirators, including police and prosecutorial investigative, supervisory, and command personnel, together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to falsely imprison and/or to intentionally inflict sever emotional distress on Plaintiff.**

**ANSWER:**    On March 30, 2005, the Court dismissed this Count. Accordingly,

no response is required.

94.    **In furtherance of this conspiracy or conspiracies, the Defendants named above, together with their unsued co-conspirators, committed the overt acts set forth above, including, but not limited to, those set forth in paragraph 59 above.**

**ANSWER:**    On March 30, 2005, the Court dismissed this Count. Accordingly,

no response is required.

95.    **Said conspirac(ies) and overt acts were and are continuing in nature.**

**ANSWER:**    On March 30, 2005, the Court dismissed this Count. Accordingly,

no response is required.

96.    **Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together to falsely imprison, maliciously prosecute, and intentionally inflict emotional distress on the Plaintiff, constitute the tort of conspiracy as set forth above.**

**ANSWER:**    On March 30, 2005, the Court dismissed this Count. Accordingly,

no response is required.

## COUNT XI
### (State Law Respondeat Superior Claim)

97.    **Plaintiff re-alleges paragraphs 1-60 and 83-96.**

**ANSWER:**  Defendant incorporates as if fully stated herein his responses to

Paragraphs 1 through 60 and 83 through 96 of Plaintiff's First Amended Complaint.

**98.    Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Martin, Shines, Hillard and Needham, were, at all times material to this complaint, employees of the Defendant City of Chicago, were acting within the scope of their employment, and their acts which violated state law are directly chargeable to the Defendant City under state law pursuant to *respondeat superior*.**

**ANSWER:**  Defendant makes no response to this Paragraph because Count XI

of Plaintiff's First Amended Complaint is not directed against him.

## COUNT XII
### (745 ILCS 10/9-102 and Common Law Claims Against the City, County and SAO)
**99.    Plaintiff re-alleges paragraphs 1 through 98.**

**ANSWER:**  Defendant incorporates as if fully stated herein his responses to

Paragraphs 1 through 98 of Plaintiff's First Amended Complaint.

**100.    Defendant City of Chicago was the employer of Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Martin, Shines, Hillard and Needham at all times relevant and material to this complaint.**

**ANSWER:**  Defendant makes no response to this Paragraph because Count XII

of Plaintiff's First Amended Complaint is not directed against him.

**101.    These Defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.**

**ANSWER:**  Defendant makes no response to this Paragraph because Count XII

of Plaintiff's First Amended Complaint is not directed against him.

**102.    Defendant Cook County and its State's Attorneys' Office was the employer of Defendants Devine, Dernbach and Doe at all times relevant and material to this complaint; additionally and/or alternatively, said County is responsible for any judgment entered against Defendants Dernbach, Doe and Devine, and is therefore a necessary party thereto.**

**ANSWER:**    Defendant makes no response to this Paragraph because Count XII

of Plaintiff's First Amended Complaint is not directed against him.

**103.    These Defendants committed the acts alleged above under color of law
and in the scope of their employment as employees of Cook County and its State's
Attorneys' Office.**

**ANSWER:**    Defendant makes no response to this Paragraph because Count XII

of Plaintiff's First Amended Complaint is not directed against him.

## DEFENDANT'S AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses to Plaintiff's First Amended

Complaint:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims against Defendant are barred in whole or in part by the doctrine

of qualified immunity.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims against Defendant are barred in whole or in part by the doctrine

of collateral estoppel.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff failed to mitigate his damages, if any.

## FOURTH AFFIRMATIVE DEFENSES

Plaintiff's claims against Defendant are barred in whole or in part by the

applicable statute of limitations.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Defendant are barred in whole or in part by the doctrine

of judicial estoppel.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint fails to state a claim upon which relief may be granted.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff cannot maintain a cause of action for wrongful conviction or malicious prosecution if it is shown that Plaintiff, in fact, participated in the murder of Renee Coleman, Tony Coleman, Michelle Jointer, and Ricardo Pedro.

## DEFENDANT'S JURY DEMAND

Defendant demands a jury trial.

Respectfully submitted,

Richard T. Sikes, Jr.
Richard B. Levy
Michael P. Kornak
Terrence J. Sheahan
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606-6677
312/360-6000

*Counsel for Defendant Jon Burge*

Dated: June 23, 2005