**FILED**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

JUN 2 8 2005 WH

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| LEROY ORANGE, | ) | |
| | ) | |
| Plaintiff, | ) | **No.** 04 C 0168 |
| | ) | |
| v. | ) | **Judge James F. Holderman** |
| | ) | |
| Lt. JOHN BURGE, et al., | ) | **Magistrate Judge Schenkier** |
| | ) | |
| Defendants. | ) | |

## NOTICE OF FILING

To:     See attached service list

PLEASE TAKE NOTICE that on June 28, 2005, I caused to be filed with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, the attached **Joint Answer and Affirmative Defenses of Defendants Richard A. Devine and Dennis Dernbach to Plaintiff's First Amended Complaint,** a copy of which is hereby served upon you.

RICHARD A. DEVINE
State's Attorney of Cook County

By: _____
Stephen L. Garcia
Assistant State's Attorney
Special Projects and Assignments
500 Richard J. Daley Center
Chicago, Illinois  60602
312.603.5475

## SERVICE LIST

Thomas F. Geraghty, Esq.
J. Samuel Tenebaum, Esq.
Cathryn S. Crawford, Esq.
Northwestern University Legal Clinic
357 East Chicago Avenue
Chicago, IL 60611

G. Flint Taylor, Jr., Esq.
Joey L. Mogul, Esq.
Michael Deutsch, Esq.
Peoples Law Office
1180 North Milwaukee Avenue
Chicago, IL 60622
Attorneys for Plaintiff

Patricia C. Bobb, Esq.
Patricia C. Bobb & Associates
833 West Jackson Boulevard, Ste 200
Chicago, IL 60607
Attorney for Dennis Dernbach

Terrence M. Burns, Esq.
Harry N. Arger, Esq.
Paul A. Michalik, Esq.
Daniel M. Noland, Esq.
Dykema Gosset Rooks Pitts
10 South Wacker Drive, Ste 2300
Chicago, IL 60606
Attorney for City of Chicago, Terry Hilliard and Thomas Needham

Ritchard T. Sikes, Jr., Esq.
Terrence J. Sheehan, Esq.
Freeborn & Peters
311 South Wacker Drive
Chicago, IL 60606
Attorneys for Burge, Bahenski, Dioguardi, Flood, Madigan, McGuire, McNally and McSweeney

Eileen M. Letts, Esq.
Terry Miller, Esq.
Greene and Letts
111 West Washington Boulevard
Suite 1650
Chicago, IL 60602
Attorney for Gayle Shines and Leroy Martin


Re:    *Leroy Orange v. Former Chicago Police Lt. Jon Burge, et al.*, 04 C 00168

## CERTIFICATE OF SERVICE

I, Stephen L. Garcia, Assistant State's Attorney, hereby certify that I caused a copy of the foregoing Notice of Filing, together with the documents identified therein, to be served on the individuals listed above at their respective addresses by depositing same in the United States Mail at 500 Richard J. Daley Center, Chicago, Illinois 60602, proper postage prepaid, before 5:00 p.m. on June 28, 2005.

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUN 2 8 2005 WH

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| LEROY ORANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 04-C-00168 |
| vs. | ) | |
| | ) | Judge James F. Holderman |
| JON BURGE; et al., | ) | |
| | ) | Magistrate Judge Ashman |
| Defendants. | ) | |

## JOINT ANSWER AND AFFIRMATIVE DEFENSES
## OF DEFENDANTS RICHARD A. DEVINE AND DENNIS
## DERNBACH TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Richard A. Devine, ("State's Attorney Devine"), in his individual capacity, by

and through his attorneys, Patrick T. Driscoll, Jr., Deputy State's Attorney of Cook County, and

Assistant State's Attorneys Louis R. Hegeman and Stephen L. Garcia, and defendant Dennis

Dernbach, in his individual capacity ("ASA Dernbach"), by and through his attorney, Patricia C.

Bobb, pursuant to FRCP 8, submit the following joint answer and affirmative defenses to

plaintiff's First Amended Complaint.[1]

1.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 et seq.; the
Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States; and pendent
jurisdiction, as codified in 28 U.S.C. § 1367(a).

**ANSWER:**    The SAO Defendants admit that plaintiff brings this action pursuant to 42

U.S.C. §1983, 28 U.S.C. §1331 and 1343(a). The SAO Defendants further deny that plaintiff is

entitled to any relief at law on any of his remaining claims.

---

[1] Hereinafter, State's Attorney Devine and former Assistant State's Attorney Dennis Dernbach will be
referred to collectively as the "SAO Defendants." By its March 30, 2005 Memorandum Opinion and Order,
this Court dismissed defendants Cook County and the Office of the Cook County State's Attorney as
defendants. Defendants Richard A. Devine and Dennis Dernbach were also dismissed as defendants in their
official capacity, but remain as defendants in their individual capacities.

2.      This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

**ANSWER:**      With respect to plaintiff's claims not dismissed by this Court's March 30

Memorandum Opinion and Order, the SAO Defendants admit that venue is proper in the Northern

District of Illinois, except that the SAO Defendants deny that this Court has jurisdiction over

plaintiff's state law claims against the SAO Defendants.

3.      Plaintiff Leroy Orange is a fifty-two year old African-American man, a resident of the City of Chicago and Cook County, and a citizen of the United States.

**ANSWER:**      The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 3 of plaintiff's First Amended

Complaint.

4.      Defendant Jon Burge was a duly appointed and sworn Chicago Police Lieutenant and the commanding officer of Chicago Police Area 2 Detectives Violent Crimes Unit. Burge was the commanding officer of Defendants Leonard Bajenski, David Dioguardi, Robert Flood, Raymond Madigan, John McCabe, Dennis McGuire, Raymond McNally and Daniel McWeeny, and engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity. Defendant Burge engaged in a pattern and practice of torture and brutality himself, and also supervised, encouraged, sanctioned, condoned and ratified brutality and torture by other detectives, including, but not limited to, the police Officer Defendants named herein. In 1988, Burge was promoted to Commander of Area 3 Detectives Division by Defendant Martin and held this assignment until 1991 when he was suspended and, ultimately fired by the Chicago Police Department for the torture and abuse of Andrew Wilson.

**ANSWER:**      The SAO Defendants admit that defendant Jon Burge was at certain times a

Chicago Police Lieutenant assigned to Area 2 Detectives Violent Crimes Unit, but are without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

contained in paragraph 4 of plaintiff's First Amended Complaint .

5.      Defendants Leonard Bajenski, David Dioguardi, Robert Flood, Raymond Madigan, John McCabe, Dennis McGuire, Raymond McNally and Daniel McWeeny (referred to herein collectively, including Defendant Burge, as "the Defendant Officers") were duly appointed and sworn Chicago Police officers who were assigned to the Detective Division at Area 2 Violent

2

Crimes Unit under Defendant Burge's command, and who engaged in the conduct complained of in the course and scope of their employment. The Defendants Officers are sued in their individual capacities.

**ANSWER:** The SAO Defendants admit that defendants Bajenski, Dioguardi, Flood, Madigan, McCabe, McGuire, McNally and McWeeny were at certain times duly appointed and sworn Chicago Police officers, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 5 of plaintiff's complaint.

6. From 1987 to 1992, Defendant Leroy Martin was the Superintendent of Police for the City of Chicago, and as such was responsible for the policies, practices, and customs complained of herein. In 1983, he was Commander of the Area 2 Detective Division and was thereby Defendant Burge's direct supervisor. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

**ANSWER:** The SAO Defendants admit that defendants Leroy Marin was the Superintendent of Police for the City of Chicago, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 6 of plaintiff's First Amended Complaint.

7. From 1998 to 2004, Defendant Terry Hillard was the Superintendent of Police for the City of Chicago, and as such was responsible for the policies, practices, and customs complained of herein. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

**ANSWER:** The SAO Defendants admit that defendant Terry Hillard was the Superintendent of Police for the City of Chicago, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7 of plaintiff's First Amended Complaint.

8. From 1998 to 2002, Defendant Thomas Needham was counsel to, and administrative assistant for, Superintendent Terry Hillard, who was his direct supervisor. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 8 of plaintiff's First Amended

Complaint.

9. From 1990 to 1998, Defendant Gayle Shines was the Director of the Office of
Professional Standards of the Chicago Police Department. Her direct supervisor was the Chicago
Police Superintendent. She engaged in the conduct complained of in the course and scope of her
employment and is sued in her individual capacity.

**ANSWER:** The SAO Defendants admit that defendant Gayle Shines was the Director of

the Office of Professional Standards of the Chicago Police Department, but are without knowledge

or information sufficient to form a belief as to the truth of the remaining allegations contained in

paragraph 9 of plaintiff's First Amended Complaint.

10. Defendant City of Chicago is an Illinois municipal corporation, as such is
responsible for the policies, practices and customs of the Chicago Police Department, its Office of
Professional Standards, its Personnel Division, its Detective Division, and its Superintendent of
Police, as well as those of the Mayor and his office, the Corporation Counsel and her Office, and
the Chicago Police Board, and is and/or was the employer of each of the Defendant Officers and
Police officials. The City of Chicago is responsible for the acts of the Defendant Officers and
police officials while employed by the City of Chicago and while acting within the scope of their
employment.

**ANSWER:** The SAO Defendants admit that defendant City of Chicago is an Illinois

municipal corporation, but are without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in paragraph 10 of plaintiff's First Amended

Complaint.

11. Defendant Dennis Dernbach was an Assistant Cook County State's Attorney,
(hereinafter referred to as ASA), a supervisor in the Felony Review Unit, and was assigned to Area
2 in January of 1984. Felony Review was an investigative arm of the State's Attorneys' Office,
and as such, the ASAs assigned to this Unit worked with Chicago Police detectives, *inter alia*, in
interrogating suspects and taking statements from them. He engaged in the conduct complained of
in the course and scope of his employment and is sued in his individual capacity.

**ANSWER:** The SAO Defendants admit that ASA Dernbach was an Assistant State's

Attorney during the time period alleged in the First Amended Complaint and was at certain times a

supervisor the Felony Review Unit of the State's Attorney's Office and was assigned to various Areas of the City. The SAO Defendants deny that ASA Dernbach acted in his individual capacity and, further answering, defendants state that at all times alleged in plaintiff's complaint, ASA Dernbach acted duly and properly and within the scope of his employment, and deny that ASA Dernbach engaged in the course of conduct alleged in the complaint. The SAO defendants deny the Felony Review Unit is an investigative arm of the State's Attorney's Office or that assistant state's attorney's assigned to the Felony Review Unit participate with Chicago Police Officers or Detectives in investigations or interrogating suspects. The SAO Defendants deny the remaining allegations contained in paragraph 11 of the First Amended Complaint.

12.     Defendant Richard Devine has been the State's Attorney of Cook County from 1997 to the present, and as such is responsible for the policies, practices and customs of the State's Attorneys' Office. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

**ANSWER:**     The SAO Defendants admit that State's Attorney Devine has been the State's Attorney of Cook County from December of 1996 through the present. The SAO Defendants deny that State's Attorney Devine engaged in the course of conduct alleged in plaintiff's First Amended Complaint. The SAO Defendants deny that State's Attorney Devine acted in his individual capacity in connection with the allegations in plaintiff's complaint and, further answering, state that State's Attorney Devine acted at all times duly and properly and within the scope of his employment.

13.     Defendant John Doe was an Assistant Cook County State's Attorney assigned to the Felony Review Unit. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

**ANSWER:**     The SAO Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of plaintiff's First Amended Complaint.

14.     Defendant Cook County is a governmental entity within the State of Illinois, which consists in part of its Cook County State's Attorney's Office (hereinafter referred to as SAO). At all times relevant to this action, Cook County and the Cook County State's Attorney's Office were the employers of Defendants Devine, Dernbach and Doe, and are necessary parties to this lawsuit.

**ANSWER:**     In response to the allegations contained in paragraph 14 of plaintiff's First Amended Complaint, the SAO Defendants state that the County of Cook was dismissed as a defendant by this Court's March 30, 2005 Memorandum Opinion and Order. The SAO Defendants admit that the County of Cook is a body politic and corporate within the State of Illinois, and deny the remaining allegations contained in paragraph 14 of plaintiff's First Amended Complaint.

15.     At all times relevant to this action, each of the named defendants acted in the scope of employment, and under the color of the laws, regulations, and customs of the State of Illinois. Each defendant's actions constituted "state action" as defined under federal law.

**ANSWER:**     The SAO Defendants deny that they engaged in the conduct alleged against them in plaintiff's First Amended Complaint and, therefore, deny the allegations contained in paragraph 15 of the complaint.

16.     On January 11, 1984, Renee Coleman, Tony Coleman, Michelle Jointer and Ricardo Pedro were murdered in Renee Coleman's apartment.

**ANSWER:**     The SAO Defendants admit the allegations contained in paragraph 16 of plaintiff's First Amended Complaint.

17.     The Officer Defendants, together with other Area 2 detectives and personnel, were assigned to investigate the murders.

**ANSWER:**     The SAO Defendants admit that detectives and personnel from the Chicago Police Department were assigned to investigate the murders of Renee Coleman, Tony Coleman, Michelle Jointer and Ricardo Pedro, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 17 of plaintiff's First Amended Complaint.

18. On January 12, 1984, Plaintiff was arrested by Defendants Robert Flood, Raymond Madigan, Dennis McGuire and Daniel McWeeny, after detectives were told that he had been in Renee Coleman's apartment the previous night, and was transported to the Area 2 police station at around 3:20 p.m.

**ANSWER:** The SAO Defendants admit that plaintiff was arrested on or about January

12, 1984, in connection with the investigation of the murders of Renee Coleman, Tony Coleman,

Michelle Jointer and Ricardo Pedro, but are without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in paragraph 18 of plaintiff's First

Amended Complaint.

19. In the police car on the way to Area 2, Plaintiff asked the Defendant Officers for an attorney. In response, he was hit in the face by one of the arresting Defendants.

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 19 of plaintiff's First

Amended Complaint.

20. Once at Area 2, Plaintiff was placed in an interrogation room, where his hands were cuffed behind his back and attached to a metal ring on the wall. He was interrogated by the Defendant Officers for an extended period of time, and he denied his involvement in the murders.

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 20 of plaintiff's First

Amended Complaint.

21. When Plaintiff continued to maintain his innocence, the Defendant Officers then used a "black box" to administer electric shock to him by placing electrodes on his arms and on and in his rectum.

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 21 of plaintiff's First

Amended Complaint.

22.     During the extended interrogation of Plaintiff, the Defendant Officers continued the torture by repeatedly placing an airtight bag over Plaintiff's head, suffocating him, and by squeezing his testicles.

**ANSWER:**     The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 22 of plaintiff's First

Amended Complaint.

23.     During the same time period, the Defendant Officers were also torturing Plaintiff's co-defendant, Leonard Kidd, with electric shock from the black box and with suffocation while they interrogated him in another Area 2 interview room.

**ANSWER:**     The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 23 of plaintiff's First

Amended Complaint.

24.     During the time period that the Defendant Officers were interrogating and torturing Plaintiff and co-defendant Kidd, Defendant Burge summoned Defendant Dernbach to Area 2.

**ANSWER:**     The SAO Defendants admit that Defendant Dernbach was assigned by the

State's Attorney's Office to Area 2 on or about January 13, 1984, in his capacity as a Felony

Review assistant state's attorney, but are without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in paragraph 24 of plaintiff's First

Amended Complaint.

25.     As a result of his prior experience as a Felony Review supervisor and Assistant States Attorney, Defendant Dernbach had previously learned of numerous allegations of electric shock, baggings, and related forms of torture which had previously been made against Burge and other Area 2 officers, including several of the Defendants.

**ANSWER:**     The SAO Defendants deny the allegations contained in paragraph 25 of

plaintiff's First Amended Complaint.

26.     Defendants Dernbach and ASA Doe participated in the continuing interrogations of the Plaintiff and Leonard Kidd. Throughout the course of their torture, which continued while Dernbach and Doe were present at Area 2, Plaintiff screamed out in pain. During the time period in which the Officer Defendants continued the torture of Plaintiff and Kidd, Dernbach and Doe were

8

present at Area 2 and repeatedly went in and out of the rooms in which Plaintiff and Kidd were being interrogated.

**ANSWER:** The SAO Defendants admit that ASA Dernbach interviewed plaintiff and Leanard Kidd in connection with taking their statements and evaluating whether to approve felony charges against them, but deny that ASA Dernbach participated in any interrogation of plaintiff or Kidd, or that ASA Dernbach ever inflicted any torture or physical abuse on plaintiff or Kidd. The SAO Defendants deny the remaining allegations against them contained in paragraph 26 of plaintiff's First Amended Complaint.

27.     As a consequence of their prior knowledge, what they observed and heard while at Area 2, and their conversations with Plaintiff and Leonard Kidd, Defendants Dernbach and Doe were on notice that Plaintiff and Kidd were being tortured by the Officer Defendants. After Dernbach and Doe learned that Plaintiff and Kidd were being tortured by the Defendants Officers during their interrogations, they did nothing to stop the continuing torture and abuse.

**ANSWER:** The SAO Defendants deny that ASA Dernbach ever learned that plaintiff or Kidd were tortured by Defendant Officers and, therefore, deny the allegations contained in paragraph 27 of plaintiff's First Amended Complaint.

28.     Plaintiff's interrogation continued for twelve hours until Plaintiff, fearing that the torture would continue until he gave a statement, and as a direct result of the torture and physical abuse inflicted upon him by the Defendant Officers, submitted to the Defendant Officers' demands and agreed to make a false statement implicating himself in the murders.

**ANSWER:** The SAO Defendants admit that on January 13, 1984, plaintiff gave a statement implicating himself in connection with the murders of Renee Coleman, Tony Coleman, Michelle Jointer and Ricardo Pedro, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 28 of plaintiff's First Amended Complaint.

29.     Plaintiff's tortured "confession" was based on information supplied to Dernbach by Defendant Burge, by the other Defendants Officers, and by Leonard Kidd, who supplied false information which was a product of his torture.

9

**ANSWER:** The SAO Defendants admit that on January 13, 1984, plaintiff gave a statement implicating himself in connection with the murders of Renee Coleman, Tony Coleman, Michelle Jointer and Ricardo Pedro. and deny the remaining allegations contained in paragraph 29 of plaintiff's First Amended Complaint.

30. The Defendant Officers, through their torture, physical abuse, and coercion, and Defendants Dernbach and Doe, through their questioning and failure to stop the continuing torture and abuse, thereby constructed false oral admissions, and a false written statement which they attributed to the Plaintiff.

**ANSWER:** The SAO Defendants deny the allegations directed against ASA Dernbach contained in paragraph 30 of plaintiff's First Amended Complaint, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 30 of plaintiff's First Amended Complaint.

31. In Court the next day, and to numerous other persons thereafter, Plaintiff stated that he had been tortured into giving a false confession.

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of plaintiff's First Amended Complaint.

32. On September 27, 1984, the Superintendent of the Chicago Police Department officially commended the Defendant Officers for their "skillful interrogation techniques" in questioning Plaintiff.

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of plaintiff's First Amended Complaint.

33. The torture techniques used on Plaintiff were strikingly similar to those used against numerous other suspects at Area 2. and later at Area 3, by Defendant Burge, the other Defendant Officers, and other Area 2 and Area 3 detectives and supervisors from 1973 to 1991.

10

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of plaintiff's First Amended Complaint.

34. The Defendant Officers, together with Defendants Doe and Dernbach, included the constructed and manufactured false admissions, attributable to Plaintiff, which they knew were false and/or totally unreliable, and coerced, in official reports and presented these false admissions to prosecuting attorneys who relied upon and presented this false evidence throughout Plaintiff's case.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 34 which are directed against ASA Dernbach, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 34 of plaintiff's First Amended Complaint.

35. Defendants Bajenski, Dioguardi, Flood, Madigan, McCabe, McGuire, McNally, McWeeny, and Dernbach also presented this fabricated, coerced and totally unreliable evidence at Plaintiff's trial through false and perjured testimony.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 35 which are directed against ASA Dernbach, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 35 of plaintiff's First Amended Complaint.

36. The Defendants Officers, together with Defendants Dernbach and Doe, also suppressed from the prosecutors who prosecuted Plaintiff, from the judge and jury who heard his case, and from the prosecutors and judges who prosecuted and heard Plaintiff's appeals and post conviction petitions, that the admissions they attributed to Plaintiff were false and/or totally unreliable, coerced through torture, and fabricated, and were a product of a pattern and practice of torture and abuse at Area 2, as well as the physical implements of this pattern and practice, which were used to torture Plaintiff, Leonard Kidd, and numerous other victims, including the black box and other shocking devices, plastic bags and typewriter covers, and various handguns and other weapons.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 36 which are directed against ASA Dernbach, but are without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in paragraph 36 of plaintiff's First

Amended Complaint.

37.    While Plaintiff was awaiting trial, the Office of Professional Standards of the
Chicago Police Department (OPS) purported to open an "investigation" into Plaintiff's allegations
of torture. However this "investigation" was a complete sham and cover-up, and the Defendant
Officers and ASAs withheld their torture of Plaintiff and Leonard Kidd, and their fabrication and
coercion of evidence from the OPS, which did not even bother to question said Defendants, and
the OPS found the allegations to be "not sustained."

**ANSWER:**    The SAO Defendants County deny the allegations contained in paragraph 37

which are directed against ASA Dernbach, but are without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations contained in paragraph 37 of plaintiff's

First Amended Complaint.

38.    At Plaintiff's trial, his coerced and fabricated "confession" was presented by the
prosecution and provided the basis for his conviction.

**ANSWER:**    The SAO Defendants admit that plaintiff's statement was admitted as

evidence at trial, and that plaintiff was convicted by a jury of four counts of murder, four counts of

concealment of homicidal death and one count of aggravated arson in connection with the deaths

of Renee Coleman, Tony Coleman, Michelle Jointer and Ricardo Pedro. The SAO Defendants

deny the remaining allegations contained in paragraph 38 which are directed against ASA

Dernbach, but are without knowledge or information sufficient to form a belief as to the truth of

the remaining allegations contained in paragraph 38 of plaintiff's First Amended Complaint.

39.    On the basis of his coerced, fabricated and totally unreliable statement, Plaintiff was
wrongfully convicted by the jury of four counts of murder, four counts of concealment of
homicidal death, and one count of aggravated arson, and was sentenced to death. Absent the
Defendants' coercion, torture and fabrication, Plaintiff would neither have been prosecuted nor
convicted of crimes he did not commit.

**ANSWER:**    The SAO Defendants admit that plaintiff was convicted by a jury of four

counts of murder, four counts of concealment of homicidal death and one count of aggravated

arson in connection with the deaths of Renee Coleman, Tony Coleman, Michelle Jointer and

Ricardo Pedro. The SAO defendants deny the remaining allegations contained in paragraph 39

which are directed against ASA Dernbach, but are without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations contained in paragraph 39 of plaintiff's

First Amended Complaint.

40.     After Plaintiff was convicted, the Office of Professional Standards completed an
investigation into allegations of torture of suspects at Area 2. In a secret report which was
approved by the Director of the OPS and forwarded to Defendant Superintendent Leroy Martin,
the OPS found that from 1973 to 1985 there was a practice of systematic abuse of suspects held in
custody at Area 2 and that certain Area 2 command personnel were aware of such abuse and
condoned it. The OPS further found that this practice included psychological techniques and
planned torture, and that Area 2 command personnel were aware of the systematic abuse and
encouraged it either by actively participating in it or by failing to take any action to stop it.
Command personnel at Area 2 during part or all of that time included Defendants Burge and
Martin. The OPS further found that Defendant Burge was a "player" in this policy and practice.

**ANSWER:**     The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 40 of plaintiff's First

Amended Complaint.

41.     Plaintiff was extensively interviewed by the OPS investigator who wrote the section
of the Report which found systemic torture, which is now commonly known as the Goldston
Report, and Plaintiff's torture, as well as that of his co-defendant, Leonard Kidd, were listed as
part of the systemic torture at Area 2 in the findings of the Report.

**ANSWER:**     The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 41 of plaintiff's First

Amended Complaint.

42.     In another section of this Report, the OPS also found that Burge and two other Area
2 detectives tortured Andrew Wilson and recommended that Burge be fired.

**ANSWER:**     The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 42 of plaintiff's First

Amended Complaint.

13

43.     Defendant Superintendent Martin and other command personnel delayed, obstructed, and otherwise undermined the OPS investigation, report, findings and conclusions set forth above, *inter alia*, by suppressing the findings that Wilson was tortured and by refusing to suspend, transfer or remove Burge either before, or for nearly a year after, the findings of the OPS were first made known to them in November of 1990.

**ANSWER:**     The SAO Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of plaintiff's First Amended Complaint.

44.     Defendant Martin and other command personnel further delayed, obstructed, and otherwise undermined the OPS investigation, report, findings and conclusions set forth above, *inter alia*, by suppressing the findings that there was systematic abuse at Area 2 which implicated Defendants Martin, Burge, the Officer Defendants, and other Area 2 detectives until this report and findings were ordered produced by Federal Court order in February of 1992. This suppression prevented Plaintiff from obtaining highly exculpatory evidence for use in his post-trial proceedings.

**ANSWER:**     The SAO Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of plaintiff's First Amended Complaint.

45.     Additionally, Defendant Martin, Defendant OPS Director Shines, and other command personnel, in violation of police regulations, refused to investigate numerous other allegations of police torture which were brought to their attention, including allegations of electric shock made by torture victim Melvin Jones against Defendants Burge, McGuire, Flood, and McWeeny, or to investigate Plaintiff's allegations of torture against these same Officers, despite the findings made in the Goldston Report, and other specific recommendations to do so.

**ANSWER:**     The SAO Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of plaintiff's First Amended Complaint.

46.     In September of 1988, Defendant Devine, together with law partner William Kunkle, and their law firm, were retained by the Defendant City of Chicago to represent Defendant Jon Burge and several Area 2 detectives, including John Yucaitis and Patrick O'Hara, in the civil rights lawsuit brought against them and the City of Chicago by Area 2 torture victim Andrew Wilson.

14

**ANSWER:** The SAO Defendants admit that Andrew Wilson, who was convicted of killing two Chicago policemen, filed a civil rights action against the City of Chicago and several police officers. The SAO Defendants further state that while the law firm of Phelan, Pope & John was retained to represent the defendants in *Andrew Wilson v. City of Chicago, et al.*, State's Attorney Devine, who was not State's Attorney at that time, was not one of the attorneys primarily working on that matter. In fact, Mr. Devine spent a *de minimis* amount of time working on the file. The SAO Defendants deny the remaining allegations contained in paragraph 46 of plaintiff's First Amended Complaint.

47. For the next eight years, Defendant Devine, Mr. Kunkle, and their law firm continued to represent Defendant Burge, John Yucaitis, Patrick O'Hara and the other Area 2 defendants in the *Wilson* civil cases, as well as in the Police Board Proceedings against Burge, Yucaitis and O'Hara, wherein they were retained by the Fraternal Order of Police (FOP). Additionally, Defendant Devine, Mr. Kunkle and their law firm were retained by the Defendant City of Chicago to represent Defendant Burge in another civil rights torture case where a pattern and practice of torture was alleged. As a result of this representation, Defendant Devine, Mr. Kunkle and their law firm received over one million dollars in attorney's fees from the City of Chicago and the FOP.

**ANSWER:** The SAO Defendants admit that the law firm of Phelan, Pope & John represented the City of Chicago and the individual defendants in the *Andrew Wilson* case in various legal proceedings, but further answering state the Mr. Devine was not one of the attorneys primarily working on these matters and the record shows that Mr. Devine spent a *de minimis* amount of time working on the file. The SAO Defendants deny the remaining allegations contained in paragraph 47 of plaintiff's First Amended Complaint.

48. From 1988 to 1996, Defendant Devine, Mr. Kunkle, and their law firm were informed of a wealth of compelling evidence that their clients, including Burge, were centrally involved in a pattern and practice of torturing suspects, including Plaintiff, at Area 2, and Devine, Kunkle, and their co-counsel, together with Defendant Burge, and Area 2 detectives Yucaitis and O'Hara, made numerous litigation decisions designed to protect Burge, Yucaitis, and O'Hara from criminal, civil and administrative liability in the face of that evidence.

15

**ANSWER:** Defendant Devine denies the allegations directed as to him contained in paragraph 48 of plaintiff's First Amended Complaint. The SAO Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48 of plaintiff's First Amended Complaint.

49.    In 1997, Defendant Devine became the State's Attorney of Cook County. Acting with a clear conflict of interest and acting under the color of his authority of State's Attorney, Defendant Devine has continued, from 1997 to the present, to protect the interests of his Area 2 clients, particularly Defendant Burge, and to cover up their central role in the pattern and practice of torture, *inter alia,* by:

a.    making false public statements in which he discredited evidence of torture against his clients and other Area 2 Defendants including evidence presented by Plaintiff and other Area 2 victims, whereby they sought new suppression hearings, new trials, new sentences, pardons and/or clemency on the basis that false confessions were tortured from them;

b.    making false statements to public officials in which he discredited the evidence of torture against his clients and other Area 2 Defendants;

c.    refusing to investigate the allegations that his clients and other Area 2 and Area 3 detectives were central actors in a pattern and practice of torture and abuse which included the torture of Plaintiff, and obstructing all attempts to so investigate;

d.    suppressing evidence which further established that his clients, and other Area 2 and Area 3 detectives were central actors in the pattern and practice of torture which included Plaintiff's torture; and

e.    otherwise using his influence and decision-making power as State's Attorney of Cook County to continue the wrongful conviction and imprisonment of Plaintiff.

**ANSWER:** The SAO Defendants admit that State's Attorney Devine was elected State's Attorney of Cook County in November of 1996. The SAO Defendants deny the remaining allegations contained in paragraph 49(a)-(e) of plaintiff's First Amended Complaint.

50.    From 1993 until 1998 when she left office, Defendant OPS Director Gayle Shines suppressed findings of OPS investigators that Defendant Dioguardi, Sergeant John Byrne, and several other Area 2 detectives, under the command of Defendant Burge, tortured and abused six

suspects, including death row inmate Stanley Howard, as well as the evidence which supported these findings.

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 50 of plaintiff's First

Amended Complaint.

51. In 1998, Defendants Hillard and Needham, with full knowledge that Defendant Burge, the other Defendant Officers, and other Area 2 and Area 3 detectives participated in a pattern and practice of torture and abuse of suspects, including Plaintiff, violated police regulations and obstructed justice by overturning the OPS findings set forth in paragraph 50 above, by refusing to investigate Plaintiff's and other torture victims' claims that they had been tortured, by refusing to investigate OPS Director Gayle Shines' suppression of evidence, and by suppressing these OPS files and findings from Plaintiff and other criminal defendants.

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 51 of plaintiff's First

Amended Complaint.

52. The actions of the Defendants set forth above resulted in the further continuation of Plaintiff's wrongful conviction and false imprisonment until January 10, 2003, when Illinois Governor George Ryan granted Plaintiff a pardon on the basis of innocence. In granting Plaintiff and three other Burge death row torture victims, Madison Hobley, Aaron Patterson, and Stanley Howard, innocence pardons, the Governor found that:

> The category of horrors was hard to believe. If I hadn't reviewed the cases myself, I wouldn't believe it. We have evidence from four men, who did not know each other, all getting beaten and tortured and convicted on the basis of the confessions they allegedly provided. They are perfect examples of what is so terribly broken about our system.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 52 that are

directed against defendants Dernbach and Devine, but are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 52 of

plaintiff's First Amended Complaint.

53. In response to Plaintiff's innocence pardon, Defendant Devine, again acting on behalf of his Area 2 clients, including Defendant Burge, and under the color of his office, publicly defamed Plaintiff and the three other torture victims whom Governor Ryan also pardoned on the

17

basis of innocence by stating: "I think these people are evil. Should these people be among us? I don't think so." He referred to them as "convicted murderers" while condemning the pardons as "outrageous" and "unconscionable," and threatened to challenge them in Court.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 53 of

plaintiff's First Amended Complaint.

54. Plaintiff spent nineteen horrible years in prison for a crime he did not commit, most of which were spent on Death Row in maximum security prisons in the State of Illinois. Nearly twenty years of Plaintiff's adult life have been wrongfully taken from him due to the actions of the Defendants in this case.

**ANSWER:** The SAO Defendants admit that plaintiff was convicted and sentenced to

death for the murders of Renee Coleman, Tony Coleman, Michelle Jointer and Ricardo Pedro. The

SAO Defendants deny the remaining allegations contained in paragraph 54 of plaintiff's First

Amended Complaint.

55. The time Plaintiff spent in prison were emotionally, physically, and psychologically grueling. He spent most of his adult life alone in a tiny cell on Death Row under the most oppressive and stringent conditions.

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 55 of plaintiff's First

Amended Complaint.

56. In the nineteen lost years spent in prison, Plaintiff suffered from constant fear and anxiety, deep depression, despair, rage, boredom and loneliness. Plaintiff suffered from the loss of sustained contact with his children. He continues to live under the effect of his isolation, incarceration, and depression.

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 56 of plaintiff's First

Amended Complaint.

57. All the while suffering from the indignity, humiliation, shame, embarrassment, disgrace and discomfort of prison, Plaintiff further suffered the specter of an imminent death sentence for crimes he did not commit. The emotional and psychological scars from this injustice alone are enormous.

**ANSWER:** The SAO Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations contained in paragraph 57 of plaintiff's First

Amended Complaint.

58. Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan,
Flood, McCabe. Doe, Dernbach, Martin, Devine, Shines, Hillard, and Needham, acting jointly and
with other police and prosecutorial investigative, supervisory, and command personnel, together
and under color of law, reached an understanding, engaged in a course of conduct, engaged in a
joint action and otherwise conspired among and between themselves to deprive Plaintiff of his
constitutional rights, and did deprive Plaintiff of said rights, including his rights to be free from
unreasonable arrest and seizure, from wrongful confinement and imprisonment, from involuntary
incrimination, and from interrogation techniques which "shock the conscience" and his rights to
access to the Courts and to a fair and impartial trial, as protected by the First, Fourth, Fifth, Sixth
Eighth, and Fourteenth Amendments to the United States Constitution. Because said actions were
done with the knowledge and purpose of depriving Plaintiff, who is African-American, of the
equal protection of the laws and/or of equal privileges and immunities under the law, and with
racial animus toward the Plaintiff, they also deprived Plaintiff of his right to equal protection of the
laws under the Fourteenth Amendment, and 42 U.S.C. §§ 1983 and 1985.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 58 that are

directed against defendants Dernbach and Devine, but are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 58 of

plaintiff's First Amended Complaint.

59. In furtherance of this conspiracy or conspiracies, Defendants Burge, McGuire,
Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Doe, Dernbach, Martin,
Devine, Shines, Hillard, and Needham, together with their co-conspirators, each committed one or
more of overt acts set forth above, including, but not limited to, the wrongful arrest, imprisonment,
charging and prosecution of Plaintiff and other torture victims; the fabrication and coercion of
false and totally unreliable inculpatory evidence against Plaintiff and other torture victims; the
coercion and manufacture of false and totally unreliable evidence from Plaintiff's co-defendant;
the failure to stop the coercive interrogations of Plaintiff and his co-defendant, despite having
knowledge that they were being tortured and abused; the unconstitutional torture and coercion of
Plaintiff and other torture victims in order to compel them to make false inculpatory statements
against themselves and/or others; the repeated deception of prosecuting attorneys and judges, by,
*inter alia*, making knowing misstatements and the presentation of this knowingly false and
incomplete evidence to prosecutors and judges; the making of false and defamatory public
statements concerning Plaintiff and other torture victims; the giving of false testimony and the
filing of false and incomplete statements and reports; the suppression of favorable, exculpatory
evidence; the failure to come forward with a truthful account of the events; the refusal to

investigate and the subversion and quashing of good faith investigations and findings; the abuse of public office and the exploitation of a blatant conflict of interest to cover-up the acts of torture and abuse; and the other acts set forth above.

**ANSWER:**    The SAO Defendants deny the allegations contained in paragraph 59 that are

directed against defendants Dernbach and Devine, but are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 59 of

plaintiff's First Amended Complaint.

60.    Said conspiracy or conspiracies, joint actions and overt acts continue to this date, have caused and continue to cause Plaintiff's constitutional rights to be violated and the injuries, pain, suffering, fear, mental anguish, detention, imprisonment, humiliation, defamation of character and reputation, and loss of freedom and companionship, as set forth more fully above and below.

**ANSWER:**    The SAO Defendants deny the allegations contained in paragraph 60 that are

directed against defendants Dernbach and Devine, but are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 60 of

plaintiff's First Amended Complaint.

### COUNT I
### (42 U.S.C. 1983 Claim for Deprivation of Right
### to Fair Trial and for Wrongful Conviction)

61.    Plaintiff re-alleges paragraphs 1 through 60.

**ANSWER:**    The SAO Defendants restate and incorporate their answers and responses to

paragraphs 1 through 60 as their answer to paragraph 61 of plaintiff's First Amended Complaint.

62.    Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, and Doe, individually, jointly, and in conspiracy, caused the wrongful charging, prosecution, and conviction of Plaintiff, and these same Defendants, together with Defendants Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, caused the continuation of said wrongful conviction, by coercing, constructing and/or fabricating the false and totally unreliable statements which formed the basis for Plaintiff's charging, prosecution and conviction, by withholding from the prosecutors, judges and defense attorneys involved in Plaintiff's prosecution the fact that these admissions were false and/or totally unreliable, fabricated, and coerced, by suppressing additional exculpatory torture findings and evidence, as well as other exculpatory evidence, by giving a false and incomplete version of events

to prosecutors, by writing false reports and giving false testimony, by improperly influencing the judges hearing Plaintiff's case, *inter alia*, by making false public statements, by obstructing investigations which would have led to discovery of further exculpatory evidence, and by the additional wrongdoing set forth above, thereby unconstitutionally depriving Plaintiff of his liberty and violating his right to a fair and impartial trial and not to be wrongfully convicted, as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 62 that are

directed against defendants Dernbach and Devine, but are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 62 of

plaintiff's First Amended Complaint.

63.     The actions of Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, Doe, Martin, Devine, Shines, Hillard, and Needham, in depriving Plaintiff of his right to a fair trial and not to be wrongfully convicted were the direct and proximate cause of the injuries to Plaintiff which are set forth above.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 63 that are

directed against defendants Dernbach and Devine, but are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 63 of

plaintiff's First Amended Complaint.

## COUNT II
## (42 U.S.C. § 1983 Claim for False Arrest and Imprisonment)

64.     Plaintiff re-alleges paragraphs 1 through 63.

**ANSWER:** The SAO Defendants restate and incorporate their answers and responses to

paragraphs 1 through 63 as their answer to paragraph 64 of plaintiff's First Amended Complaint.

65.     The actions of Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, and Doe, individually, jointly, and in conspiracy, in falsely arresting and imprisoning Plaintiff, and of these same Defendants, together with Defendants Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, in continuing said imprisonment for nineteen years, without probable cause, violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable seizures.

21

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 65 that are directed against defendants Dernbach and Devine, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65 of plaintiff's First Amended Complaint.

66. The actions of the Defendants in falsely imprisoning Plaintiff, continuing said false imprisonment, and covering up their own misconduct were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 66 that are directed against defendants Dernbach and Devine, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 66 of plaintiff's First Amended Complaint.

**COUNT III**
**(42 U.S.C. § 1983 Claim for Torture and Physical Abuse)**

67. Plaintiff re-alleges paragraphs 1 through 66.

**ANSWER:** Defendant Dernbach restates and incorporate his answers and responses to paragraphs 1 through 66 as his answer to paragraph 67 of plaintiff's First Amended Complaint. The allegations of Count III of plaintiff's complaint (paragraphs 67-70) are not directed to Defendant Devine and, therefore, he makes no answer thereto.

68. The actions of Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, and McCabe in torturing and physically abusing Plaintiff and threatening him with additional torture and physical abuse, individually, jointly and in conspiracy violated his Fourth and Fourteenth Amendment rights to be free from unreasonable seizures.

**ANSWER:** Defendant Dernbach is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68 of plaintiff's First Amended Complaint. The allegations of Count III of plaintiff's complaint (paragraphs 67-70) are not directed to Defendant Devine and, therefore, he makes no answer thereto.

22

69.     Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach and Doe were aware of the torture and physical abuse of the Plaintiff, and participated in it by allowing the torture and abuse to continue while having the obligation and duty to stop it, and by failing to report the abuse to superiors in the Police Department and the State's Attorney's Office.

**ANSWER:**     Defendant Dernbach denies the allegations contained in paragraph 69 that are directed against him, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 69 of plaintiff's First Amended Complaint. The allegations of Count III of plaintiff's complaint (paragraphs 67-70) are not directed to Defendant Devine and, therefore, he makes no answer thereto.

70.     The actions of the Defendants, individually, jointly and in conspiracy, in torturing and physically abusing the Plaintiff, threatening to inflict further torture and physical abuse, and/or failing to stop the torture and abuse while having the opportunity and duty to do so, were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

**ANSWER:**     Defendant Dernbach denies the allegations contained in paragraph 70 that are directed against him, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 70 of plaintiff's First Amended Complaint. The allegations of Count III of plaintiff's complaint (paragraphs 67-70) are not directed to Defendant Devine and, therefore, he makes no answer thereto.

## COUNT IV
### (42 U.S.C. § 1983 Claim for Coercive Interrogation)

71.     Plaintiff re-alleges paragraphs 1 through 70.

**ANSWER:**     Defendant Dernbach restates and incorporate his answers and responses to paragraphs 1 through 70 as his answer to paragraph 70 of plaintiff's First Amended Complaint. The allegations of Count IV of plaintiff's complaint (paragraphs 71-73) are not directed to Defendant Devine and, therefore, he makes no answer thereto.

72.    The actions of Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach and Doe, individually, jointly, and in conspiracy, in coercively interrogating Plaintiff, and the actions of Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, and McCabe, in using torture techniques which "shock the conscience" during said interrogations, resulted in false, coerced, and fabricated admissions, and violated Plaintiff's Fifth and Fourteenth Amendment rights to be free from compulsory self-incrimination and deprivation of liberty without due process of law.

**ANSWER:**    Defendant Dernbach denies the allegations contained in paragraph 72 that are directed against him, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 72 of plaintiff's First Amended Complaint. The allegations of Count IV of plaintiff's complaint (paragraphs 71-73) are not directed to Defendant Devine and, therefore, he makes no answer thereto.

73.    The actions of the Defendants in using torture and other coercive techniques to interrogate Plaintiff, and/or condoning and permitting the use of said techniques, were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

**ANSWER:**    Defendant Dernbach denies the allegations contained in paragraph 73 that are directed against him, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 73 of plaintiff's First Amended Complaint. The allegations of Count IV of plaintiff's complaint (paragraphs 71-73) are not directed to Defendant Devine and, therefore, he makes no answer thereto.

### COUNT V
### (42 U.S.C. § 1983 Due Process Claim for Deprivation of Access to Courts)

In its March 30, 2005 Memorandum Opinion and Order, this Court dismissed County V of plaintiff's First Amended Complaint (paragraphs 74-75) as to all parties. The SAO Defendants therefore make no answer thereto.

24

## COUNT VI
### (42 U.S.C. § 1983 *Monell* Policy Claim Against City of Chicago)

The allegations of Count VI of the First Amended Complaint (paragraphs 76-82) are not

directed against the SAO Defendants and, therefore, they make no answer thereto.

## COUNT VII
### (State Law Claim for False Imprisonment)

83.     Plaintiff re-alleges paragraphs 1 through 82.

**ANSWER:**     The SAO Defendants restate and incorporate their answers and responses to

paragraphs 1 through 82 as their answer to paragraph 83 of plaintiff's First Amended Complaint.

84.     The imprisonment of Plaintiff, without probable cause, individually, jointly, and in
conspiracy by Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan,
Flood, McCabe, Dernbach, and Doe, its continuation by these Defendants, together with
Defendants Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy,
constituted the tort of false imprisonment under Illinois law.

**ANSWER:**     The SAO Defendants deny the allegations contained in paragraph 84 that are

directed against defendants Dernbach and Devine, but are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 84 of

plaintiff's First Amended Complaint.

85.     Defendants' actions in imprisoning Plaintiff were willful and wanton.

**ANSWER:**     The SAO Defendants deny the allegations contained in paragraph 85 that are

directed against defendants Dernbach and Devine, but are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 85 of

plaintiff's First Amended Complaint.

## COUNT VIII
### (State Law Claim for Malicious Prosecution)

86.     Plaintiff re-alleges paragraphs 1 through 85.

25

**ANSWER:** The SAO Defendants restate and incorporate their answers and responses to paragraphs 1 through 85 as their answer to paragraph 85 of plaintiff's First Amended Complaint.

87. Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, and Doe, individually, jointly, and in conspiracy, initiated a malicious prosecution without probable cause against Plaintiff, and these same Defendants, together with Defendants Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, continued said prosecution, again without probable cause. Said prosecution was ultimately terminated in Plaintiff's favor. The Defendants' actions were done in a willful and wanton manner, and directly and proximately caused the injury and damage to Plaintiff set forth above.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 87 that are directed against defendants Dernbach and Devine, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 87 of plaintiff's First Amended Complaint.

## COUNT IX
### (State Law Claim for Intentional Infliction of Emotional Distress)

88. Plaintiff re-alleges paragraphs 1 through 87.

**ANSWER:** The SAO Defendants restate and incorporate their answers and responses to paragraphs 1 through 87 as their answer to paragraph 88 of plaintiff's First Amended Complaint.

89. Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan, Flood, McCabe, Dernbach, and Doe, individually, jointly, and in conspiracy, by, *inter alia*, torturing a false confession from Plaintiff and/or by failing to stop said torture, by constructing and fabricating the details of said confession, and by procuring his prosecution, conviction, and death sentence for multiple murders he did not commit by means of said false confession, engaged in extreme and outrageous conduct. Additionally these same Defendants, together with Defendants Devine, Hillard, Shines, Martin and Needham, individually, jointly, and in conspiracy, by fabricating, coercing, and suppressing other evidence, by continuing Plaintiff's false imprisonment on death row after procuring his wrongful conviction, by making false and defamatory statements, by refusing to investigate, and by otherwise abusing and defaming Plaintiff, engaged in additional extreme and outrageous conduct.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 89 that are directed against defendants Dernbach and Devine, but are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 89 of

plaintiff's First Amended Complaint.

90.     Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan,
Flood, McCabe, Dernbach, Doe, Martin, Devine, Shines, Hillard, and Needham, intended, by
subjecting Plaintiff to such humiliating, degrading conduct, to inflict severe emotional distress on
Plaintiff, and knew that their conduct would cause Plaintiff and his family severe emotional
distress.

**ANSWER:**     The SAO Defendants deny the allegations contained in paragraph 90 that are

directed against defendants Dernbach and Devine, but are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 90 of

plaintiff's First Amended Complaint.

91.     As a direct and proximate result of Defendants' outrageous conduct, Plaintiff was
injured, and has experienced, and continues to experience, severe emotional distress, including fear
of execution, nightmares, sleep disruption, symptoms of post traumatic stress disorder, anxiety,
depression, and inability to focus or concentrate.

**ANSWER:**     The SAO Defendants deny the allegations contained in paragraph 91 that are

directed against defendants Dernbach and Devine, but are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 91 of

plaintiff's First Amended Complaint.

## COUNT X
### (State Claim for Conspiracy)

92.     Plaintiff re-alleges paragraphs 1 through 91.

**ANSWER:**     The SAO Defendants restate and incorporate their answers and responses to

paragraphs 1 through 91 as their answer to paragraph 92 of plaintiff's First Amended Complaint.

93.     Defendants Burge, McGuire, Bajenski, McNally, Dioguardi, McWeeny, Madigan,
Flood, McCabe, Doe, Dernbach, Martin, Devine, Shines, Hillard, and Needham, with other unsued
co-conspirators, including police and prosecutorial investigative, supervisory, and command
personnel, together reached an understanding, engaged in a course of conduct, and otherwise
jointly acted and/or conspired among and between themselves to falsely imprison and/or to

27

continue said imprisonment, to maliciously prosecute and/or continue said prosecution, and to intentionally inflict severe emotional distress on Plaintiff.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 93 that are directed against defendants Dernbach and Devine, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 93 of plaintiff's First Amended Complaint.

94. In furtherance of this conspiracy or conspiracies, the Defendants named above, together with their unsued co-conspirators, committed the overt acts set forth above, including, but not limited to, those set forth in paragraph 59 above.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 94 that are directed against defendants Dernbach and Devine, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 94 of plaintiff's First Amended Complaint.

95. Said conspirac(ies) and overt acts were and are continuing in nature.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 95 that are directed against defendants Dernbach and Devine, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 95 of plaintiff's First Amended Complaint.

96. Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together to falsely imprison, maliciously prosecute, and intentionally inflict emotional distress on the Plaintiff, constitute the tort of conspiracy as set forth above.

**ANSWER:** The SAO Defendants deny the allegations contained in paragraph 96 that are directed against defendants Dernbach and Devine, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 96 of plaintiff's First Amended Complaint.

28

## COUNT XI
### (State Law Respondeat Superior Claim)

The allegations of Count XI of the First Amended Complaint (paragraphs 97-98) are not directed to the SAO Defendants and, therefore, they make no answer thereto.

## COUNT XII
### (745 ILCS 10/9-102 and Common Law Claims Against the City, County and SAO)

Count XII of plaintiff's First Amended Complaint (paragraphs 99-103) is directed to defendants City of Chicago, Cook County and the Cook County State's Attorney's Office. In its March 30, 2005 Memorandum Opinion and Order, this Court dismissed the County of Cook and the Cook County State's Attorney's Office as defendants in this matter. Therefore, the SAO Defendants make no answer thereto.

WHEREFORE, based on the foregoing, the SAO Defendants respectfully request that this Court enter judgment in their favor and against plaintiff, and that this Court grant the SAO Defendants fees, costs and such other relief as this Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### Collateral Estoppel and *Res Judicata*

1.     As the basis of his claims, plaintiff alleges that he was coerced into giving a false written statement, which resulted in his wrongful conviction. (FAC, ¶¶ 28-30, 34, 35, 38, 39, 62, 69, 72, 89)

2.     Plaintiff failed to raise the issue of his alleged coerced confession on direct appeal from his criminal conviction. Subsequently, the Illinois Supreme Court found that plaintiff's claim that newly discovered evidence corroborates his claim that his confession was coerced and

29

involuntary, making its introduction at trial a violation of his state and federal constitutional rights, was barred by principles of *res judicata* and waiver.

3.    Filing this claim in federal court, plaintiff attempts to relitigate issues relating to the alleged coercion of his confession and his contention that certain pattern and practice evidence proves his claim, which the Illinois Supreme Court decided and found barred by principles of *res judicata* and waiver in connection with plaintiff's successive post-conviction petitions.

4.    Pursuant to *Migra v. Warren City School District Bd. of Ed.*, 465 U.S. 75, 104 S.Ct. 892 (1984), the rulings on plaintiff's post-conviction petitions should be given the same preclusive effect they would be given in state court. Therefore, plaintiff is precluded from relitigating those claims before this Court and is bound by the state court decisions under collateral estoppel and res judicata.

## SECOND AFFIRMATIVE DEFENSE
### Absolute, Quasi-Judicial Prosecutorial Immunity

4.    At the time of the matters alleged in plaintiff's complaint, ASA Dernbach was assigned to the felony review division of the State's Attorney's Office and, in this capacity, evaluated whether criminal charges should have been filed against plaintiff.

5.    When ASA Dernbach spoke with plaintiff, took his statement and ultimately determined whether criminal charges should be approved, he performed acts toward initiating a prosecution and presenting the State's case.

6.    Because the conduct complained of on the part of ASA Dernbach arises out of the evaluation of evidence and taking plaintiff's statement for the purpose of initiation and prosecution of criminal charges, plaintiff's claims are barred on the basis of absolute prosecutorial immunity.

## THIRD AFFIRMATIVE DEFENSE
### Sovereign Immunity

7.      Plaintiff's state law claims against ASA Dernbach and State's Attorney Devine relate to their conduct in relation to the prosecution and conviction of plaintiff for the murders of Renee Coleman, Tony Coleman, Michelle Jointer and Ricardo Pedro.

8.      Plaintiff's state law claims against ASA Dernbach and State's Attorney Devine are really claims against state officials for performing their function as prosecutors, a function that falls within the scope of their employment.

9.      The State's Attorney is the constitutional state officer vested with the exclusive discretion in the initiation and management of a criminal prosecution. The prosecution of plaintiff's criminal case is, therefore, well within the scope of the State's Attorney's authority.

10.     Consequently, the Illinois Court of Claims has sole and exclusive jurisdiction over Plaintiff's state law claims against ASA Dernbach and State's Attorney Devine.

## FOURTH AFFIRMATIVE DEFENSE
### Statute of Limitations

11.     Plaintiff's §1983 claims in Counts III and IV accrued more than two years earlier than the filing of plaintiff's complaint and, thus, these claims are time barred.

12.     Plaintiff's state law claim for intentional infliction of emotional distress (Count IX) accrued more than one year earlier than the filing of plaintiff's complaint and, thus, this claim is time barred.

## FIFTH AFFIRMATIVE DEFENSE
### Failure to Mitigate Damages

13.     Plaintiff has failed to mitigate the damages he claims to have sustained.

## JURY DEMAND

The SAO Defendants demand a jury trial.

31

Respectfully submitted,

RICHARD A. DEVINE
State's Attorney of Cook County

By: _____
One of the Attorneys For Defendant,
State's Attorney Richard A. Devine

Patrick T. Driscoll, Jr.
Deputy State's Attorney

Louis R. Hegeman, Supervisor
Special Projects and Assignments

Stephen L. Garcia
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
312.603.5475

By: _____
One of the Attorneys For Defendant,
Dennis Dernbach

Patrick C. Bobb, Esq.
Patricia C. Bobb & Associates, P.C.
833 West Jackson Boulevard
Suite 200
Chicago, Illinois 60607
312.334.3122

32