IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEROY ORANGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 168 |
| v. ) | |
| ) | |
| Former Chicago Police Lt. JON BURGE, et. al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On April 22, 2004, plaintiff Leroy Orange ("Orange") filed a twelve-count amended complaint against various defendants. (Dkt. No. 9). Orange's complaint alleges numerous civil rights violations under 42 U.S.C. § 1983 including claims of false arrest/false imprisonment (Count II) and excessive force (Count III). (*Id.* at ¶ 64-70). The defendants initially filed various motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to stay discovery. (Dkt. Nos. 35, 37, 41, 50, 53). On March 30, 2005, this court denied the defendants' motion to dismiss regarding Counts II and III of Orange's amended complaint. *See Orange v. Burge*, No. 04 C 168, 2005 WL 742641 (N.D. Ill. March 30, 2005). On May 25, 2006, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), defendants Jon Burge ("Burge"), Leonard Bajenskil ("Bajenski"), David Dioguardi ("Dioguardi"), Robert Flood ("Flood"), Raymond Madigan ("Madigan"), Dennis McGuire ("McGuire"), Raymond McNally ("McNally"), Daniel McWeeny ("McWeeny"), Terry Hillard ("Hillard"), Thomas Needham ("Needham"), Richard Devine ("Devine"), Leroy Martin ("Martin"), Gayle Shines ("Shines"), Dennis Dernbach ("Dernbach"), and City of Chicago

("City of Chicago"), (jointly, "defendants"), filed a renewed motion to dismiss Counts II and III based on new Seventh Circuit authority. (Dkt. No. 189). For the reasons set forth below, this court grants the defendants' renewed motion to dismiss Counts II and III of Orange's complaint.

BACKGROUND

The following set of facts, unless otherwise noted, are taken from Orange's April 22, 2004 first amended complaint. In determining a Rule 12(b)(6) motion to dismiss, all well pleaded facts and allegations in Orange's complaint are construed as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *WM Wrigley Jr. Co. v. Cadbury Adams USA LLC,* No. 06 CV 941, 2006 WL 1793571 at *1 (N.D.Ill. June 26, 2006).

Burge, Bajenski, Dioguardi, Flood, Madigan, McCabe, McGuire, and McNally, ("defendant officers"), were Chicago Police Officers assigned to the Area 2 police station ("Area 2"). In 1984, Burge was the commanding officer over the other defendant officers in the Detectives Violent Crimes Unit at Area 2. (Dkt. No. 9 at ¶ 4). Martin was Superintendent of Police for the City of Chicago from 1987-1992 and was Burge's direct supervisor. (*Id.* at ¶ 6). Hillard was Superintendent of Police for the City of Chicago from 1998-2004, and Needham was Hillard's counsel and administrative assistant from 1998-2004. (*Id.* at ¶¶ 7-8). Shines was Director of the Office of Professional Standards of the Chicago Police Department ("OPS") from 1990-1998. (*Id.* at ¶ 9).

Dernbach was an Assistant Cook County State's Attorney ("ASA"), a supervisor in the Felony Review Unit, and was assigned to Area 2 in January of 1984. (*Id.* at ¶ 11). Devine has been the State's Attorney of Cook County from 1997 through the present. (*Id.* at ¶ 12).

On January 12, 1984, Orange was arrested and brought to Area 2 in connection with the

murders of Renee Coleman, Tony Coleman, Michelle Jointer, and Ricardo Pedro. (*Id.* at ¶ 18). At Area 2, Orange was placed in an interrogation room where his hands were cuffed behind his back and attached to a metal ring on the wall. (*Id.* at ¶ 20). Orange initially maintained his innocence during the interrogation. (*Id.*). Defendant officers then administered electric shock to Orange by placing electrodes on his arms and in his rectum. (*Id.* at ¶ 21). Throughout the interrogation, defendant officers also repeatedly placed an airtight bag over Orange's head, and squeezed his testicles. (*Id.* at ¶ 22). Orange's interrogation lasted for twelve hours. (*Id.* at ¶ 28). Fearing the torture would continue, Orange gave a false statement implicating himself to the four murders. (*Id.*)

Defendant Officers and Dernbach also allegedly manufactured false admissions by Orange in official reports and presented these admissions to prosecuting attorneys who relied upon and presented this evidence throughout Orange's case. (*Id.* at ¶ 34). Defendant Officers and Dernbach suppressed from the prosecutors, the judge and jury in Orange's criminal trial that Orange's confession was obtained through torture. (*Id.* at ¶ 36). Based on the false confession, Orange was found guilty by a jury on four counts of murder, four counts of concealment of homicidal death, and one count of aggravated arson, and was sentenced to death. (*Id.* at ¶ 39).

While awaiting trial, OPS purported to open an investigation into Orange's allegations of torture at Area 2. (*Id.* at ¶ 37). After Orange was convicted, OPS completed the investigation and in a secret report found that from 1973 to 1985 there was systematic abuse of suspects held in custody at Area 2. (*Id.* at ¶ 40). The OPS report remained secret until a federal court ordered the report produced in February of 1992. (*Id.* at ¶ 44).

Orange served nineteen years in prison, most of which was on death row, until he was

3

pardoned on January 10, 2003 by then Governor George Ryan on the basis of innocence. (*Id.* at ¶ 54 & 52). Governor Ryan also pardoned Madison Hobley, Aaron Patterson, and Stanley Howard, who had been allegedly tortured by Burge. (*Id.*)

## LEGAL STANDARDS

*A. Motion to Reconsider*

A motion to reconsider is an interlocutory order permissible within the inherent authority of the district court, the common law and/or under Federal Rule of Civil Procedure 54(b). *Ramada Franchise Systems, Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02 C 1941, 2004 WL 2966948 at *3 (N.D. Ill. Nov. 24, 2004). The Seventh Circuit has said that a motion to reconsider is appropriate where: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court. *Id.* (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990)).

The Seventh Circuit's March 8, 2006 decision in *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006), *cert. granted*, 126 S. Ct. 2891 (2006), has led to a controlling change in law since this court's decision from almost a year earlier of March 30, 2005. The decisions of the Seventh Circuit are binding upon this court and so this court must reconsider its prior March 30, 2005 decision.

*B. Motion to Dismiss Pursuant to Rule 12(b)(6)*

4

"In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well pleaded facts and allegations in the complaint." *WM Wrigley Jr. Co., supra*, 2006 WL 1793571 at *1 (citing *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002)). Dismissal is only proper when it appears beyond a doubt that "the plaintiff can prove no set of facts that would entitle him to relief." *Hernandez v. City of Goshen,* 324 F.3d 535, 537 (7th Cir. 2003) (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)).

## ANALYSIS

The defendants filed a renewed motion to dismiss Counts II and III of Orange's amended complaint based on new Seventh Circuit authority stating that Orange's false imprisonment/false arrest and excessive force claims accrued at the time of his arrest in 1984. (*See* Def.'s Mot.). In response, Orange argues that his Fourth Amendment claims are part of the subset of claims that do not accrue at the time of arrest; alternatively that the statute of limitations on his Fourth Amendment claims should be equitably tolled; or that his access to the courts claim should be revived. (Def. Resp. at 2, 5, 7). We address each of these arguments individually.

A. *Accrual of Fourth Amendment Claims*

Defendants argue that based on the recent decision by the Seventh Circuit in *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006), Orange's Fourth Amendment claims accrued at the time of his arrest in 1984, and that they are barred by the statute of limitations because he did not file his claims until 2004. (Def. Reply at 3-5). Orange argues that the Seventh Circuit's decision in *Wallace*, is expressly limited to "the normal run of cases" where the Fourth

5

Amendment violation affects only the evidence that might or might not be presented to the trier of fact. (Pl.'s Response at 4). Orange asserts that his case is not within this normal run of cases because his Fourth Amendment claim effects not merely the evidence that might or might not be presented to the trier of fact, but whether he could be prosecuted at all. (*Id.*). Orange also argues that any finding that his claims did not accrue until his pardon in 2003 would be contrary to the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994), which stands for the proposition that Orange would have been barred from bringing his § 1983 claims until his pardon in 2003 because it would have required the evaluating court to declare his conviction and sentence invalid. *See Orange*, 2005 WL 742641 at *7.

"Although federal law governs the question of the accrual of constitutional torts, state statutes of limitations and tolling doctrines apply once accrual has been determined." *Wallace*, 440 F.3d at 424; *see also Hardin v. Straub,* 490 U.S. 536, 538-39, 109 S.Ct. 1998 (1989). Under Illinois law, the appropriate statute of limitations for § 1983 claims is two years under 735 ILCS § 5/13-202. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998).

The Seventh Circuit in *Wallace,* decided that the general ruling in *Heck*, that a constitutional claim cannot be brought until the defendant's conviction is nullified, does not apply to § 1983 claims that would not invalidate a criminal prosecution because of the independent source or inevitable discovery doctrines. *Wallace*, 440 F.3d at 425-426. The court noted that the Supreme Court's decision in *Heck*, did not contemplate a rule that all § 1983 claims accrue when the criminal conviction has been set aside. *Id.* at 427. Thus, the Seventh Circuit held, "[i]ndividuals and attorneys who wish to preserve a claim for false arrest or similar Fourth Amendment violations should file their civil rights actions at the time of arrest." *Id.*

6

The *Wallace* court reaffirmed the Seventh Circuit's holding in *Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996), that a claim for false arrest accrues at the time of arrest. *Id.* at 1056-57. The Seventh Circuit recognized its holding in *Wallace* was an arguable extension of *Heck*, but responded that it was "an extension that is justifiable in light of the policies behind both the statute of limitations and the need to avoid unnecessary interference with the outcomes of criminal proceedings." *Wallace*, 440 F.3d at 427.

The decision in *Wallace* did recognize one exception to the general rule that Fourth Amendment claims accrue at the time of arrest. Where a Fourth Amendment violation is an element of the claim, "there is an independent reason to insist that a plaintiff wait to sue until the criminal conviction has been set aside." *Id.* at 428. An example of this would be where a plaintiff is convicted of resisting arrest and subsequently challenges the legality of the arrest. *Id.* (citing *Heck*, 512 U.S. at 486 n.6). In such a case, for the plaintiff to prevail in his § 1983 action, "he would have to negate an element of the offense of which he has been convicted." *Heck*, 512 U.S. at 486 n.6. The Seventh Circuit thus has determined that the clear accrual rule applies to the "normal run of cases, in which the Fourth Amendment violation affects only the evidence that might or might not be presented to a trier of fact." *Wallace*, 440 F. 3d at 428. In its decision, the *Wallace* court expressly overruled its holding in *Gauger v. Hendle,* 349 F.3d 354 (7th Cir. 2003), that accrual of Fourth Amendment claims should be determined on a case by case basis. The court felt that in these "normal run of cases," a clear accrual rule is superior to a case-by-case approach. *Wallace,* 440 F.3d at 428.

Based on the Seventh Circuit's March 8, 2006 ruling in *Wallace*, this court holds that Counts II and III of Orange's complaint are barred by the two year statute of limitations. The

7

Seventh Circuit laid out a clear rule that any Fourth Amendment § 1983 claim accrues at the time of arrest with the only exception being when the Fourth Amendment violation is an element of the claim. In the case at bar, the Fourth Amendment violation alleged by Orange is not an element to the crimes for which he was convicted. The alleged Fourth Amendment violations affected only the evidence that was subsequently presented to a trier of fact, and thus, Orange's claims fall within the "normal run of cases" the Seventh Circuit was referring to in *Wallace*. While Orange's claims of torture and false imprisonment are extremely disturbing, this court is bound by the decisions of the Seventh Circuit. Based on the decision in *Wallace*, Orange's claims accrued in 1984 at the time of arrest and should have been filed within two years of that arrest. This court relied on the *Gauger* decision when it initially determined that Counts II and III of Orange's amended complaint should not be dismissed, *see Orange*, 2005 WL 742641 at *6-7, and as such this court must reconsider its March 30, 2005 decision.

B. *Equitable Tolling*

Orange, in the alternative, argues that the statute of limitations should be equitably tolled even if *Wallace* requires the reconsideration of this court's March 30, 2005 decision. (Pl's Resp. at 5). Orange contends that he was prevented from litigating his current claims because defendants fraudulently suppressed the extent and scope of torture at Area 2. (*Id.* at 6). Orange alleges that the secret police report found a pattern of systematic abuse and torture at Area 2 between 1973-1985. (*Id.*). Because this document was not released until 1992 under a federal court order, Orange argues that he was prevented from obtaining highly exculpatory evidence for use in his post trial proceedings. (*Id.* at 7). Further, Orange alleges that from 1993-1998 several defendants continually suppressed evidence of torture at Area 2. (*Id.*). Orange, therefore, argues

8

that he was prevented from asserting his rights and that defendants actively misled him. (*Id.*).

"State, rather than federal, doctrine of equitable tolling governs cases," where the statute of limitations is borrowed from state law. *Shropshear v. Corporation Council of the City of Chicago*, 275 F.3d 593 (7th Cir. 2001). Equitable tolling is appropriate where a defendant has: (1) actively misled the plaintiff; (2) where plaintiff has been prevented from asserting his/her rights in some extraordinary way; or (3) where plaintiff timely but mistakenly asserted his/her rights in the wrong forum. *Clay v. Kuhl,* 189 Ill.2d 603, 614 (2000) (citing *Ciers v. O.L. Schmidt Barge Lines, Inc.,* 285 Ill.App.3d 1046, 1052 (Ill. App. Ct. 1997)); *see also Castillo v. Zuniga*, No. 01 C 616, 2002 WL 398519 at *11 (N.D.Ill. Mar. 14, 2002). "Equitable tolling principles should be applied with caution," *Castillo*, No. 01 C 616, 2002 WL 398519 at *11; (citing *Ciers*, 285 Ill.App.3d at 1052)).

Orange's claim that the statute of limitations should be equitably tolled because of the OPS reports concealment is not adequate to meet the requirements for equitable tolling. Orange at no time was prevented from filing a lawsuit and any concealed evidence was not necessary to file a claim. *See e.g. United States v. Sternes*, No. 03 C 8869, 2004 WL 2271809 (N.D. Ill. Oct. 6, 2004) (finding that petitioners argument that the statute of limitations on filing a *habeas* claim should be equitably tolled because certain "Golston Files" were not available to him, did not suffice to apply equitable tolling because he discovered the factual predicate of his *habeas* claim the day he was arrested).

The concealment of any evidence did not prevent Orange from discovering any cause of action he may have had. Orange knew or should have known the day of his arrest that he had a cause of action for false arrest/imprisonment and excessive force. The OPS reports findings

9

were not necessary to timely file his § 1983 claims that he now wishes to bring in Counts II and III.

Even if the suppression of the OPS report until 1992 was sufficient to toll the statute of limitations, Orange presents no allegations that he was further prevented or misled from filing a cause of action within two years of the reports release. "[A] plaintiff who invokes equitable tolling to suspend the statute of limitations must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information." *Unterreiner v. Volkswagen of America, Inc.,* 8 F.3d 1206, 1213 (7th Cir. 1993) (citing *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 453 (7th Cir. 1990)). Orange states no reason why he was prevented from filing a suit after the release of the OPS report in 1992. The OPS report and the further alleged suppression of evidence from Area 2 between 1993-1998 may have made it more difficult to effectively litigate the case. However, being able to effectively litigate, and timely filing, are two separate things. Orange has alleged no reason, and this court can construct no set of facts, as to why Orange could not file his Fourth Amendment claims at the time of his arrest. It is therefore inappropriate to apply the equitable tolling doctrine to this case.

*C. Denial of Access to the Courts*

Orange finally argues that if his claims are now lost due to the statute of limitations he has been denied access to the courts on these claims. (Pl.'s Resp. at 7-8). Defendants counter that Orange knew of the alleged violations when they occurred in 1984 and thus should have filed his claims within two years of that date. (Def. Reply at 10). "A cover up leads to a denial of access to the courts only where the cover-up was to some extent sucessful." *Kies v. City of Aurora*, 149 F.Supp.2d 421, 424 (N.D. Ill. 2001) (citing *Vasquez v. Hernandez*, 60 F.3d 325, 329

(7th Cir. 1995)).  When a defendants' cover up has not prevented a plaintiff from pursuing a tort action, a persons' access to the courts has not been violated.  *Id.*  However, where police or other law enforcement officials cover up information that prevents a plaintiff from discovering his or her cause of action, that persons' right to access of the courts has been violated.  *See Thompson v. Boggs*, 33 F.3d 847, 852 (7th Cir. 1994); *see also Bell v. Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984) *overr'd on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005).  In this case, any concealment of evidence by defendants did not prevent Orange from filing his Fourth Amendment claims in 1984.  Orange was obviously personally present at the alleged detention and torture, and thus had personal knowledge of his potential claims on the date they allegedly occurred.  Any evidence concealed by the defendants was not necessary for Orange to discover his potential cause of actions against defendants.

## CONCLUSION

For the reasons set forth above, the defendants' renewed motion of May 25, 2006 to dismiss Counts II and III of Orange's amended complaint (Dkt. No. 189) is granted.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:  August 11, 2006